THE STATE OF OHIO, APPELLANT, *v.* GARDNER, APPELLEE.

[Cite as *State v. Gardner,* 135 Ohio St.3d 99, 2012-Ohio-5683.]

*Criminal law—Arrest warrant—Reasonable expectation of privacy—Mere existence of an outstanding warrant does not render a later unjustified seizure lawful.*

(No. 2011-2134—Submitted September 26, 2012—Decided December 6, 2012.)

APPEAL from the Court of Appeals for Montgomery County,

No. 24308, 2011-Ohio-5692.

_____

O'CONNOR, C.J.

{¶ 1} In this appeal, we consider whether an individual who is the subject of an outstanding arrest warrant forfeits all expectations of privacy protected by the Fourth Amendment to the U.S. Constitution and the Ohio Constitution, Article I, Section 19. We hold that he does not. We therefore affirm the decision of the court of appeals, which found error in the trial court's decision denying a motion to suppress based solely on the notion that an arrest warrant "cleanses" any error by police in seizing an individual later found to be subject to the warrant, and we remand the cause to the trial court to consider whether police properly detained appellee, Damaad Gardner, before discovering that he was the subject of an active arrest warrant.

**RELEVANT BACKGROUND**

{¶ 2} On March 17, 2010, Officer David House of the Dayton Police Department was in an unmarked cruiser patrolling a neighborhood described as a high crime area. During his patrol, he observed a pickup truck bearing license plates that indicated the vehicle was from outside Montgomery County. He

followed the truck because he believed that people from outside Montgomery County came to Dayton to buy illegal drugs.

{¶ 3} After reviewing computerized motor-vehicle-registration records, Officer House learned that the truck was registered to someone from Clinton County who had a drug-related conviction. Officer House followed the truck to see if the driver was going to an area in which drugs were known to be sold.

{¶ 4} The truck pulled into the driveway of a residence, and the driver and his passenger went into the home. Officer House watched the house to see if the driver would stay for only a brief time, which he believed would indicate that a drug sale had taken place. After 15 minutes, neither the driver nor the passenger had returned to the vehicle, and Officer House left the scene. Three hours later, however, he returned.

{¶ 5} Upon his return, Officer House saw that the truck was still in the driveway and that a car was also present. Officer House checked the registration of the car and learned that it was registered to Richard Easter, a Caucasian male, approximately six feet tall and weighing 160 pounds. Easter had an outstanding warrant for his arrest for failing to appear at a trial in Butler County on a drug case. Officer House began surveillance on the house to determine if Easter was in it.

{¶ 6} Soon thereafter, two African-American men emerged from the house and went to the car. One, appellee, Damaad Gardner, got in the car and sat in the front passenger seat; the other man got in and sat in the back seat. Both men appeared younger than Easter.

{¶ 7} A man who was later identified as Easter then emerged from the home and took the driver's seat. As Easter drove away, Officer House followed him with the intent to call a marked police cruiser to stop Easter's vehicle, determine if Easter was the driver, and if so, arrest him on the outstanding

warrant. Before he could do so, however, Easter pulled into a gas station, parked the car, and purchased cigarettes.

{¶ 8} Officer House, wearing a police-issued vest that bore his badge and "DAYTON POLICE" in large letters, approached Easter. Easter admitted his identity. While standing near the driver's door of Easter's car, Officer House handcuffed and arrested Easter.

{¶ 9} As Officer House was arresting Easter, he noticed that Gardner was moving inside the car, had his hand on the door handle, and appeared to be getting ready to exit the vehicle. Officer House walked Easter around the car in order to approach the men inside the car from the passenger side. Officer House saw Gardner rise from the seat and reach into the back of his shorts. Officer House shouted to Gardner to place his hands on the dashboard. Gardner complied.

{¶ 10} After ordering Gardner from the car, Officer House, who was the only law-enforcement agent at the scene, handcuffed him. He told Gardner that he was not under arrest, but that he was being handcuffed only for the officer's safety.

{¶ 11} Officer House then patted down Gardner. Although he did not discover weapons, he did detect something he suspected to be crack cocaine in Gardner's buttocks. Officer House placed Gardner under arrest and removed the contraband. Before *Miranda* warnings were given, Gardner stated something to the effect of "He gave it to me to hide it."

{¶ 12} After other officers arrived on the scene, Gardner was taken into custody. Police then determined that he was the subject of an arrest warrant for a traffic violation.

{¶ 13} Gardner was indicted on one count of possession of crack cocaine. He unsuccessfully moved the trial court to suppress the cocaine found in his possession. In denying the motion, the judge described the arrest warrant as "a big elephant in the room." According to the judge, "If there's an arrest warrant

for Mr. Gardner, the ballgame's over, right?  Then everything's cleansed.  Even if I agree totally with the defense up till now."  Ultimately, the judge, citing an unreported Second District decision, *Dayton v. Click*, 2d Dist. No. 14328, 1994 WL 543210 (Oct. 5, 1994), stated, "Presuming for a moment * * * there was an illegal stop or illegal search, it matters not.  I mean, because in this case we know Officer House didn't discover the arrest warrant until after the stop, search, pat-down and that had all occurred.  But it makes no difference under this authority."  Based on *Click* and its progeny, the judge denied the motion to suppress.

{¶ 14} Gardner then pleaded no contest to one count of possession of crack cocaine.  Upon his conviction, he appealed.  After characterizing *Click* and its progeny as "labyrinthine, if not desultory," a divided panel of the Second District Court of Appeals reversed, noting that it was not bound by the doctrine of stare decisis to apply *Click* because this case involves a constitutional question. *State v. Gardner*, 2d Dist. No. 24308, 2011-Ohio-5692, ¶ 31.  It also found that there was no evidence showing "when and how the officers discovered Gardner's name or that there was a warrant; whether the court found facts justifying—or not justifying—a *Terry* patdown; or whether, if such a patdown were justified, whether the seizure of the drugs was within the plain feel exception." *Id*., ¶ 39.  It thus remanded to the trial court for further proceedings.

{¶ 15} We accepted the state's discretionary appeal, 131 Ohio St.3d 1483, 2012-Ohio-1143, 963 N.E.2d 824, which presents a single proposition of law: "When a person is subject to arrest on an outstanding warrant, he or she has no expectation of privacy that would protect him or her from execution of that warrant."  We reject the state's assertion and affirm the appellate court's decision.

**ANALYSIS**

{¶ 16} " 'No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear

4

and unquestionable authority of law.' " *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), quoting *Union Pacific Ry. Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 35 L.Ed. 734 (1891).  Thus, our constitutions forbid searches and seizures without warrants, except in a few narrow circumstances. *See generally Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (describing Fourth Amendment protections); *State v. Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, 860 N.E.2d 1006, ¶ 13 ("If the state wishes to intrude on the individual's right to be secure in his person, house, paper, and effects by searching or seizing him or his things, the state must first secure a warrant. Section 14, Article I, Ohio Constitution").

{¶ 17} As the Supreme Court has explained:

> Implicit in the Fourth Amendment's protection from unreasonable searches and seizures is its recognition of individual freedom. That safeguard has been declared to be "as of the very essence of constitutional liberty" the guaranty of which "is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen * * *." *Gouled v. United States*, 255 U.S. 298, 304, 41 S.Ct. 261, 263, 65 L.Ed. 647 (1921); cf. *Powell v. Alabama*, 287 U.S. 45, 65-68, 53 S.Ct. 55, 62-64, 77 L.Ed. 158 (1932).

*Ker v. California*, 374 U.S. 23, 32-33, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).  Put another way:

> The fourth amendment protects the privacy and personal security of individuals from arbitrary and oppressive interference by limiting the search-and-seizure authority of law enforcement

officials. The standard against which the fourth amendment requires that we judge the validity of a search or seizure is one of reasonableness in light of the totality of the circumstances. *Pennsylvania v. Mimms,* 434 U.S. 106, 109-110, 98 S.Ct. 330, 332, 54 L.Ed.2d 331, 335-336 (1977); *United States v. Sink*, 586 F.2d 1041, 1047 (5th Cir.1978), cert. denied, 443 U.S. 912, 99 S.Ct. 3102, 61 L.Ed.2d 876 (1979). In determining the reasonableness of a particular law enforcement practice, a court must weigh the public interest promoted by the practice against its intrusion upon the personal rights of the individual protected by the fourth amendment. *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447, 481 (1979); *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979); *United States v. Martinez-Fuerte*, 428 U.S. 543, 553, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116, 1125 (1976). Some of the factors that the court should consider are "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. at 559, 99 S.Ct. at 1884.

*Wanger v. Bonner*, 621 F.2d 675, 681 (5th Cir.1980). Thus, unless it is objectively reasonable to do so, no individual may be detained "even momentarily" by the police. *Florida v. Royer,* 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Ker* at 33, quoting *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374 (1931).

{¶ 18} In its arguments here, the state casts aside these core concepts— embodied in both the federal and state constitutions and explained by the United States Supreme Court and this court—and insists that an individual who is the

subject of an outstanding arrest warrant has no privacy interests and thus no standing to challenge a search by police. In support of its assertions, the state relies almost exclusively on *Click* and the line of cases that followed *Click*. *State v. Hines*, 2d Dist. No. 24346, 2012-Ohio-207, ¶ 14 (describing the line of cases that followed *Click* as "the tortured history" of that precedent).

{¶ 19} *Click* is not good law.

{¶ 20} *Click* and its progeny stand for the proposition that an individual subject to an arrest warrant has "no reasonable expectation of privacy in being free from being stopped arbitrarily by police" because the warrant is the embodiment of a court's command to arrest the individual. *State v. Smith*, 2d Dist. No. 22434, 2008-Ohio-5523, ¶ 11; *see State v. Williams*, 2d Dist. No. 22535, 2008-Ohio-6030, ¶ 21. Under *Click*, "[t]he mere existence of an outstanding warrant, in other words, renders a seizure lawful, whether or not the officer is aware of the warrant at the time of the seizure." *State v. Gray*, 2d Dist. No. 22688, 2009-Ohio-1411, ¶ 12.

{¶ 21} The state asserts that the rationale in *Click* is consistent with the Fourth Amendment and that "[b]ecause Gardner was subject to being arrested, searched, and taken to jail on the warrant, he had no expectation of privacy that would protect him from an insufficiently justified *Terry* stop and frisk." And it asserts that *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), and *Payton v. New York*, 445 U.S. 573, 602, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), support its contention. We disagree.

{¶ 22} It is true that a person subject to an arrest warrant does not enjoy the full panoply of privacy rights that other individuals enjoy. As the state contends, an arrest warrant authorizes the police to enter into an individual's home to seize him. *Payton* at 602-603. But the holding in those cases presupposes that the police knew that there was a warrant for the individual's arrest when entering a home to make an arrest. The state cites no authority, and

we are aware of none, that supports a conclusion that a person who is the subject of an arrest warrant has no privacy protection.

{¶ 23} We will not condone the notion that the unlawfulness of an improper arrest or seizure always can be purged by the fortuitous subsequent discovery of an arrest warrant. As one federal court succinctly stated, "This argument is preposterous; the Fourth Amendment does not countenance such post hoc rationalization." *Bruce v. Perkins*, 701 F.Supp. 163, 165 (N.D.Ill.1988).

{¶ 24} In so holding, we recognize that Gardner was the subject of an outstanding warrant (albeit for a traffic violation) and that he had possessed crack cocaine. But efforts "to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land." *Weeks v. United States*, 232 U.S. 383, 393, 34 S.Ct. 341, 58 L.Ed. 652 (1914). There is always a temptation in criminal cases to let the end justify the means, but as guardians of the Constitution, we must resist that temptation. *See United States v. Mesa*, 62 F.3d 159, 163 (6th Cir.1995). After all, Fourth Amendment freedoms are not second-class rights; they are indispensable to all members of a free society. *See Brinegar v. United States*, 338 U.S. 160, 180-181, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (Jackson, J., dissenting).

{¶ 25} Although we have rejected the state's constitutional claim, we intimate no opinion about whether suppression was proper. We agree with the court of appeals that the trial court denied the motion to suppress without finding whether there was a reasonable, articulable suspicion to justify Officer House's patdown of Gardner and whether the contraband seized could be justified. We thus affirm the appellate court's judgment, including its order to remand this cause to the common pleas court to make the necessary findings and for any other proceedings that may be necessary after those findings are made.

Judgment affirmed.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Matthias H. Heck Jr., Montgomery County Prosecuting Attorney, and Carley J. Ingram and Andrew T. French, Assistant Prosecuting Attorneys, for appellant.

Marlow & Neuherz, L.L.C., and Rebekah S. Neuherz, for appellee.

Lewis R. Katz; Timothy Young, Ohio Public Defender, and Stephen Hardwick, Assistant Public Defender; and Robert L. Tobik, Cuyahoga County Public Defender, and John T. Martin, Assistant Public Defender, urging affirmance on behalf of amici curiae, Professor Lewis R. Katz, Office of the Ohio Public Defender, and Office of the Cuyahoga County Public Defender.

_____