[Cite as *State v. Roth*, 2014-Ohio-984.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                   CASE NO.  7-13-10

    v.

WILLIAM L. ROTH,                          O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Napoleon Municipal Court
Trial Court No. 12 TRC 00686 A, B

Judgment Affirmed

Date of Decision:  March 17, 2014

APPEARANCES:

    *William F. Hayes* for Appellant

    *Paul A. Skaff* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, William L. Roth ("Roth"), appeals the August 6, 2013 judgment of the Napoleon Municipal Court journalizing his conviction by a jury for operating a vehicle while under the influence of alcohol and operating a vehicle while under the influence of alcohol with refusal, and finding him guilty of driving left of center. Roth assigns as error the trial court overruling his motion to suppress evidence based upon his interaction with a member of the Damascus Township Fire and Rescue crew. As grounds for suppression, Roth claimed that he was unlawfully "seized" in prohibition of the Fourth Amendment to the United States Constitution.

{¶2} On March 23, 2012, at 5:06 p.m., the Damascus Township Fire and Rescue responded to a call regarding a traffic accident at the intersection of U.S. 6 and S.R. 65 in the Village of McClure located in Henry County, Ohio. The traffic accident occurred when Roth, who was operating a motorcycle without a helmet, drove left of center and collided with another individual driving a pizza delivery truck. Emergency medical personnel made contact with Roth, who had visible cuts and abrasions on his face and arms. Roth's glasses were also broken during the accident and his nose was bleeding. Roth was examined by the fire and rescue crew and treated at the scene. Roth refused to be transported to a hospital for further medical evaluation.

{¶3} While the fire and rescue crew was attending to Roth, a Henry County Sheriff's Deputy briefly stopped by the scene while en route to a "welfare check" concerning a domestic violence call. Upon observing that Roth's injuries were minor and upon learning that the State Highway Patrol was on its way, the Deputy left the scene and continued on to the domestic violence call.

{¶4} Several minutes later, at 5:29 p.m., Trooper Fitzgerald of the State Highway Patrol arrived on the scene. Trooper Fitzgerald made contact with Roth. During his interaction with Roth, Trooper Fitzgerald detected an odor of alcoholic beverage. Trooper Fitzgerald asked Roth to sit in his cruiser so that he could get a statement regarding the accident from Roth. While in the cruiser, Trooper Fitzgerald again detected an odor of alcoholic beverage coming from Roth. Trooper Fitzgerald asked Roth if he had recently consumed any alcoholic beverages. Roth claimed that he had been drinking the previous evening and had yet to take a shower or change his clothes.

{¶5} Roth agreed to submit to a series of standardized field sobriety tests and a preliminary breath test on a portable device. Based on the odor of alcoholic beverage, Roth's performance on the standardized field sobriety tests, and the results of the preliminary breath test, which indicated a BAC of .086, Trooper Fitzgerald determined Roth to be impaired and placed him under arrest for

operating a vehicle while under the influence of alcohol. Roth refused any further impairment testing while in custody.

{¶6} On March 26, 2012, Roth was charged with operating a vehicle while under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a); refusing to submit to a chemical test of his blood, breath, or urine ("OVI with refusal"), in violation of R.C. 4511.19(A)(2)(a); and driving left of center, in violation of R.C. 4511.29. The complaint also noted that this offense was Roth's third OVI offense in six years. Roth pled not guilty to the charges.

{¶7} On June 20, 2012, Roth filed a motion requesting the trial court to suppress any evidence obtained as a result of an unlawful seizure. Specifically, Roth asserted in his motion that after he was treated and cleared by the fire and rescue crew and had exchanged insurance information with the other driver, "a member of the Damascus Township Fire and Rescue advised [him] that he was not free to leave and [he] was forced to wait for the police to arrive." (Doc. No. 14 at 3). Roth claimed that this constituted an unlawful "seizure" by the Damascus Township Fire and Rescue because the crew member had no probable cause to detain him.

{¶8} On June 28, 2012, the trial court held a hearing on Roth's motion to suppress where several witnesses testified. Notably, David Badenhop, the member of the Damascus Township Fire and Rescue crew who allegedly made

-4-

statements to Roth preventing him from leaving the accident scene until law enforcement arrived was not called to testify as a witness at the suppression hearing.

{¶9} The following testimony was adduced at the suppression hearing.

{¶10} Joel Ward, the volunteer fire chief with the Damascus Township Fire and Rescue, testified that he arrived at the accident scene roughly a minute after receiving the dispatch call. He testified that he made contact with Roth and persuaded him to have his injuries assessed by the ambulance crew. Ward recalled that even though Roth's medical assessment demonstrated that he did not suffer any significant injuries, standard emergency medical protocol required the ambulance crew to contact a doctor and get confirmation of their assessment before releasing Roth. Ward recalled that the ambulance crew was still on the scene at the time Trooper Fitzgerald arrived.

{¶11} Ward also testified that he did not order Roth to remain at the scene nor did he hear any member of his crew do so. Ward explained that he had no authority to keep Roth at the scene and, if Roth had indicated to him that he was leaving, his only course of action would have been to call dispatch and notify them of Roth's departure.[1] Ward also testified that he was the only contact between the dispatcher and the crew at the scene. He recalled contacting the dispatcher prior to

---

[1] Ward testified that the dispatcher worked for the Henry County Sheriff's Office.

the arrival of law enforcement and inquiring about "an ETA" for the State Highway Patrol because the accident participants were free to leave and in the process of leaving. (Tr. at 17). Ward testified that he then heard sirens and estimated that "thirty seconds or so" elapsed between the time he contacted dispatch and Trooper Fitzgerald's arrival. (Id. at 18).

{¶12} Deputy Vocke testified that he was at the accident scene for approximately thirty seconds before continuing on to another call. He made contact with Fire Chief Wade and informed him that the State Highway Patrol was on their way to handle the accident investigation. Deputy Vocke testified that he did not instruct anyone on the fire and rescue crew to keep Roth at the scene until the arrival of the State Highway Patrol.

{¶13} Trooper Fitzgerald testified that he was travelling from Wood County when he received the dispatch call and arrived at the accident scene at 5:29 p.m., approximately twenty three minutes later. He recalled that while he was en route to the accident location the dispatcher informed him that the driver of the motorcycle was leaving the scene and that the Damascus Fire and Rescue crew was attempting to keep him there. He stated that he did not tell dispatcher or anyone else to keep Roth at the scene until he arrived. Trooper Fitzgerald also testified that he was never advised of a possible OVI before arriving at the scene and had no reason to suspect an OVI until he made contact with Roth.

{¶14} Roth testified that after he exchanged insurance and contact information with the other driver, his friend, Ray Rutledge, arrived at the accident scene to drive Roth's motorcycle home for him. Roth recalled that Rutledge was on the motorcycle and Roth was helping him get it started when Badenhop walked to the front of the motorcycle, told Roth and Rutledge that they could not leave, and asked them to turn off the motorcycle. Roth explained that he had intended to leave in a car once he assisted Rutledge in getting the motorcycle started. Notably, the trial court sustained an objection raised by the prosecution on the grounds of hearsay that prevented Roth from testifying to the specific statements Badenhop allegedly made to him and Rutledge regarding them leaving the accident scene. Neither Badenhop nor Rutledge testified at the suppression hearing.

{¶15} After hearing the evidence before it, the trial court overruled Roth's motion to suppress finding that the evidence failed to demonstrate that Roth was prevented from leaving the scene of the accident or that he was subjected to a custodial situation.

{¶16} The trial court conducted a jury trial and Roth was convicted on all three counts. The trial court sentenced Roth to serve 180 days in jail with 120 days suspended and ordered him to pay a fine of $850.00, plus court costs.[2]

---

[2] The trial court initially issued its judgment entry of conviction and sentence on December 6, 2012 and an appeal of that judgment was filed by Roth. However, this Court dismissed the appeal because the judgment

{¶17} Roth now appeals, asserting the following assignments of error.

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT/APPELLANT "MR. ROTH" BY EXCLUDING EVIDENCE AS "HEARSAY," WHEN IT CLEARLY WAS NOT, AT THE SUPPRESSION HEARING DESPITE THE WELL ESTABLISHED RULE THAT THE RULES OF EVIDENCE DO NOT APPLY TO SUPPRESSION HEARINGS.**

**ASSIGNMENT OF ERROR NO. II**

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT/APPELLANT IN FAILING TO SUPPRESS THE OBSERVATIONS OF, AND EVIDENCE OBTAINED BY, THE POLICE AS A RESULT OF THE UNCONSTITUTIONAL SEIZURE OF THE DEFENDANT/APPELLANT'S VEHICLE. THE SEIZURE WAS UNCONSTITUTIONAL AS THE PARAMEDIC ACTING AS AN AGENT OF THE GOVERNMENT DID NOT HAVE A REASONABLE, ARTICULABLE BASIS TO STOP DEFENDANT FROM LEAVING UNDER THE FOURTH AMENDMENT OF [SIC] THE UNITED STATES CONSTITUTION.**

{¶18} For ease of discussion, we elect to address the assignments of error together.

*First and Second Assignments of Error*

{¶19} On appeal, Roth argues that the trial court erred in excluding his testimony regarding statements made to him by a member of the Damascus

---

was not a final order. The trial court subsequently issued its August 13, 2013 judgment entry of conviction and sentence which is the subject of this appeal.

Township Fire and Rescue crew on the grounds of inadmissible hearsay. Roth also argues that the trial court erred in overruling his motion to suppress.

{¶20} We will first address Roth's contention regarding the trial court's ruling on his motion to suppress. A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8. With respect to the trial court's conclusions of law, however, our standard of review is de novo and we must decide whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist. 1997).

{¶21} On appeal, Roth claims he was unlawfully "seized" by Dave Badenhop, a member of the Damascus Township Fire and Rescue crew, when, according to Roth, Badenhop stepped in front of his motorcycle and advised Roth and his friend that they had to remain at the accident scene until law enforcement arrived. Specifically, Roth argues that at the time of his encounter with Badenhop he had already been cleared by the ambulance crew and had exchanged insurance

information with the other driver and therefore was under no obligation to remain at the scene of the accident. Roth further asserts that Badenhop did not have probable cause to detain him and that any evidence obtained by Trooper Fitzgerald subsequent to Roth's "unlawful detention" by Badenhop should be suppressed.

{¶22} " 'The fourth amendment protects the privacy and personal security of individuals from arbitrary and oppressive interference by limiting the search-and-seizure authority of law enforcement officials.' " *State v. Gardner*, 135 Ohio St.3d 99, 2012-Ohio-5683, ¶ 17, quoting *Wanger v. Bonner,* 621 F.2d 675, 681 (5th Cir.1980). "In a Fourth Amendment context, the judicially-created exclusionary rule, created to deter illegal police conduct, provides that evidence obtained through unconstitutional searches and seizures is subject to exclusion and prospectively inadmissible." *State v. Starkey*, 11th Dist. Portage No. 2012–P–0038, 2012-Ohio-6219, ¶ 25, citing *U.S. v. Leon*, 468 U.S. 897, 916 (1984).

{¶23} In the case sub judice, Roth has failed to establish that he was in fact "seized" by law enforcement officials. First, other than Roth's own testimony, there was no evidence presented at the suppression hearing to support Roth's contention that Badenhop prevented him from leaving the location of the accident. Fire Chief Wade explicitly stated that he did not observe any member of his crew advise Roth to remain at the scene. Wade also acknowledged that he had no authority to keep Roth at the accident scene if Roth had attempted to leave.

Wade's testimony on this point is corroborated by the fact that he called dispatch to inform them that the accident participants were free to leave the scene and inquired about the estimated arrival time of law enforcement.

{¶24} Moreover, the timeline established by the testimony at the suppression hearing demonstrated that a matter of minutes elapsed from the time Roth was cleared by the ambulance crew and Trooper Fitzgerald's arrival. Additionally, Roth fully cooperated with Trooper Fitzgerald's investigation by sitting in his cruiser and voluntarily giving him a statement regarding the details of the accident. In short, there was no evidence presented at the suppression hearing to corroborate Roth's version of the events that he felt that he was not free to leave the scene of the accident prior to the arrival of law enforcement.

{¶25} Second, even if Badenhop had made statements to Roth indicating that he was not free to leave, Roth has failed to demonstrate that Badenhop was a law enforcement official. Testimony at the suppression hearing revealed that the members of the Damascus Township Fire and Rescue crew are volunteers who are compensated $10.00 per call by the Township. Roth argues that this minimal compensation, combined with fact that the Township pays for the crew's equipment and machinery as well as the firehouse utilities, is sufficient to establish a governmental/law enforcement nexus for purposes of a Fourth Amendment analysis.

**{¶26}** However, Roth cites no authority to support this contention. To the contrary, the relevant case law on this issue dictates that in this case there must have been some evidence that Badenhop acted at the direction or as an agent of law enforcement. *See e.g., State v. Archer*, 197 Ohio App.3d 570, 2011-Ohio-5471, ¶ 22 (7th Dist.); *State v. Ellis*, 2d Dist. Greene No. 05CA78, 2006-Ohio-1588, ¶ 14. In other words, there must have been evidence of "a great deal of entanglement" between Badenhop's conduct and law enforcement for the alleged seizure in this case to have implicated Fourth Amendment protection. *State v. Cook*, 149 Ohio App.3d 422, 426, 2002-Ohio-4812 ¶ 11 (2d Dist.). Here, both Deputy Vocke and Trooper Fitzgerald testified that they never instructed anyone at the accident scene to keep Roth at the location until law enforcement arrived. Moreover, Trooper Fitzgerald testified that it was not until he made contact with Roth, and detected an odor of alcoholic beverage, that he first became suspicious that Roth had possibly committed an OVI offense.

**{¶27}** Next, Roth argues that the trial court erred in excluding his testimony regarding the specific statements Badenhop allegedly made to him. Roth argues that his testimony on this matter was not hearsay but rather was offered to explain his conduct under the circumstances. Roth further maintains that even if his testimony was hearsay, the trial court erred in excluding it because hearsay is permissible at suppression hearings.

{¶28} We acknowledge that in some instances in a suppression hearing a trial court " 'may rely on hearsay and other evidence, even though that evidence would not be admissible at trial.' " *Maumee v. Weisner*, 87 Ohio St.3d 295, 298 (1999), quoting *United States v. Raddatz*, 447 U.S. 667, 679 (1980). However, a trial court still retains discretion to determine the admissibility of evidence at a suppression hearing—i.e., the inherent reliability and relevance of the evidence being offered. *See State v. Woodring*, 63 Ohio App.3d 79, 81 (11th Dist. 1989).

{¶29} Here, Roth was attempting to testify to specific statements allegedly made by Badenhop to corroborate his own testimony that Badenhop prevented him from leaving the accident scene. For reasons not apparent in the record, Roth chose not to call Badenhop as a witness at the suppression hearing and there is nothing in the record to suggest that Badenhop was unavailable to testify at the hearing. Even without the specific statements, Roth was still able to testify to his interaction with Badenhop and the circumstances contributing to him feeling that he was not free to leave the accident scene. However, as previously mentioned, none of the other witnesses provided testimony to support Roth's position.

{¶30} Even assuming *arguendo* that the trial court should have allowed Roth's testimony at the suppression hearing, Roth has failed to demonstrate that the admission of this evidence would have changed the trial court's ruling on his motion to suppress and therefore he has failed to demonstrate that he suffered

prejudice as a result of the trial court's exclusion of the evidence as hearsay. *See* Crim.R. 52(A); *State v. Woodring*, 63 Ohio App.3d 79, 81 (11th Dist. 1989).

{¶31} For all these reasons, we find no error in the trial court's decision to overrule Roth's motion to suppress. Accordingly, the assignments of error are overruled and the judgment of the Napoleon Municipal Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**