**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 811

September Term, 2014

_____

STATE OF MARYLAND

v.

CHUCKIE DONALDSON

Meredith,
Wright,
Reed,

JJ.

Opinion by Meredith, J.

Filed: January 28, 2015

In this appeal, the State, appellant, challenges the ruling of the Circuit Court for Baltimore County suppressing evidence discovered during a traffic stop of Chuckie Donaldson, appellee. The State concedes that the officer who performed the search lacked probable cause to search appellee, but argues that, because appellee was on parole at the time of the search, appellee had a diminished expectation of privacy, and therefore, the search was lawful despite the lack of probable cause. Appellee asserts that, because the officer was unaware that appellee was on parole when the officer performed the search, appellee's status as a parolee did not justify the warrantless search.

## QUESTION PRESENTED

The State filed this interlocutory appeal pursuant to Maryland Code, Courts & Judicial Proceedings Article, § 12-302(c), and presents a single question for our review, which we have rephrased as follows: Did the circuit court err in granting appellee's motion to suppress?[1]

Because appellee's parole status was not known to the police officer at the time of the search, we conclude that the search cannot be justified as a parolee search, and we affirm the circuit court's grant of the motion to suppress.[2]

---

[1] The State presented the following question for our review:

Did the lower court err in granting Donaldson's motion to suppress where Donaldson had a reduced expectation of privacy in his person and possessions because he was on parole, and Detective Wisniewski had reasonable suspicion that Donaldson was engaged in criminal activity?

[2] An unreported opinion was previously filed in this case on January 12, 2015. That opinion is superseded by this reported opinion.

BACKGROUND

On the evening of August 27, 2012, Detective Edward Wisniewski of the Baltimore County Police Department was conducting surveillance of the Beltway Motel in Baltimore County when he observed an unidentified, disheveled man pacing back and forth outside the motel. After watching the man for several minutes, the detective saw a Buick driven by appellee pull into the parking lot. The detective observed the unidentified man enter the passenger side of the Buick and then exit a minute later. The disheveled man then entered the side entrance of the motel, and the Buick drove away. Based on Detective Wisniewski's training and experience, Detective Wisniewski believed that he had just observed a drug transaction. He followed the Buick out of the parking lot and requested that a marked police vehicle conduct a traffic stop.

After appellee's vehicle had been pulled over for failure to use a turn signal, Detective Wisniewski ordered appellee out of the vehicle. The officer searched appellee and found a single blue pill in a pants pocket. Although the detective did not know what the pill was at the time he discovered it, the pill was later identified as oxycodone, a painkiller for which appellee had a prescription. Because the detective suspected the blue pill was an illegal substance, however, he arrested appellee and searched appellee's vehicle. Inside the vehicle, police found a small plastic bag containing eleven gel capsules filled with brown powder, as well as a cell phone that belonged to appellee. After the phone rang several times, the officer flipped open the phone, and observed a text message from a contact named "Steve" that

2

stated "7 for $60," which the officer interpreted as an apparent reference to a drug transaction. Appellee was charged with multiple drug offenses, including possession with intent to distribute a controlled dangerous substance (based on the eleven gel capsules found in the car).

Appellee subsequently moved to suppress the drugs found on his person and in his car, as well as the incriminating text message found on his phone. At the suppression hearing, Detective Wisniewski testified that the area of the motel was a common place for drug activity. He stated that, when appellee's vehicle was being pulled over, the detective observed appellee "jockeying around" suspiciously in the driver's seat. The detective also testified that, after the police stopped appellee's vehicle for allegedly making a turn without using a turn signal, appellee consented to a search of his person and his car. Detective Wisniewski testified that he observed a suspicious blue pill in an open pocket of appellee's cargo pants prior to conducting the consensual searches of appellee's person and vehicle. Appellee testified, however, that he never consented to a search. The circuit court found appellee's testimony on this issue more credible, and determined that he had not consented to a search. The circuit court also rejected the State's contention that the small blue pill in appellee's pants pocket had been found in plain view by peering into a pocket.

The State presented evidence at the suppression hearing indicating that appellee was on parole at the time of the search, but the State conceded that the officer performing the search was not aware of that fact prior to the search and arrest. In addition to the plain view

3

and consent arguments proffered by the State to justify the search and arrest, the State argued that, because appellee was on parole, he had a reduced expectation of privacy. As a result, the State argued, the search was lawful because Detective Wisniewski needed only a reasonable and articulable suspicion that appellee was engaged in criminal activity in order to conduct a search of a parolee. Appellee responded that, because the officers searching appellee were unaware that he was on parole, the search could not be justified on that basis. The circuit court agreed with appellee and suppressed the evidence, stating: "I don't see how [appellee's parole status] plays into this case on the facts that we have." On June 13, 2014, the State filed a timely notice of an interlocutory appeal, and the record was transmitted on September 15, 2014.

## STANDARD OF REVIEW

When reviewing the grant of a motion to suppress, we extend "great deference" to the factual findings and credibility determinations of the circuit court, and review those findings only for clear error. *Brown v. State*, 397 Md. 89, 98 (2007). Further, we view the facts in the light most favorable to the party who prevailed on the motion. *Holt v. State*, 435 Md. 443, 457 (2013). We review the circuit court's legal conclusions *de novo* and "exercise our independent judgment as to whether an officer's encounter with a criminal defendant was lawful." *Brown*, 397 Md. at 98. *See also Williams v. State*, 372 Md. 386, 401 (2002) ("In determining whether a constitutional right has been violated, we make an independent, de

novo, constitutional appraisal by applying the law to the facts presented in a particular case.").

## DISCUSSION

The State asserts that the circuit court erred in two respects: first, by concluding that appellee's parole status was not relevant to the Fourth Amendment analysis; and second, by concluding that Detective Wisniewski did not have reasonable, articulable suspicion that appellee was engaged in illegal drug activity. The State does not contest the circuit court's factual finding that Detective Wisniewski did not observe the blue pill in plain view, nor does the State argue that the court erred in finding that appellee did not consent to a search. The State also does not challenge the circuit court's conclusion that Detective Wisniewski lacked probable cause to search appellee and his car; the State conceded at oral argument that it is not suggesting we should find that there was probable cause for the search.

The State's principal argument is that a person on parole lacks a sufficient expectation of privacy to assert a claim that the police have violated the Fourth Amendment by conducting a warrantless search without probable cause. The State observes in its brief: "[A] person on parole or probation has an 'austerely diminished' privacy interest as compared with ordinary citizens." (Citing *Feaster v. State*, 206 Md. App. 202, 217 (2011)). The State points out that we held in *Feaster* that searches of parolees are permissible even if the searching officer lacks probable cause to conduct a search. *Feaster*, 206 Md. App. at 219 (holding that searches of parolees are lawful when officer has "a reasonable suspicion that evidence of a

5

crime will be found"). *Accord United States v. Knights*, 534 U.S. 112, 121 (2001) (holding that a warrantless search of a probationer's home is lawful when supported by "reasonable suspicion" that the probationer is engaged in criminal activity). *See also Samson v. California*, 547 U.S. 843, 857 (2006) (if the parolee has agreed to suspicionless searches as a condition of parole, the Fourth Amendment "does not prohibit a police officer from conducting a suspicionless search of a parolee"). Based on these authorities, the State asserts: "Because Donaldson was a parolee at the time of the incident, his reasonable expectations of privacy were diminished, and reasonable suspicion was all the detective needed to search Donaldson's person and vehicle."

The State focuses upon our discussion in *Feaster* as dispositive of appellee's claim that he was subjected to an unreasonable warrantless search. In *Feaster*, 206 Md. App. at 217-24, we explained that the Supreme Court had applied a balancing test in *Knights* and *Samson* to conclude that a police officer may search a parolee if the officer has a reasonable, articulable suspicion that the parolee is engaged in criminal activity. Because there was no issue regarding the officer's knowledge that the suspect was on parole in those cases, the discussion of the balancing test in those cases gave no weight to the officer's knowledge. The State asserts, therefore, that the officer's knowledge of the appellee's parole status is "irrelevant," and the State's interest in regulating parolees outweighs appellee's privacy interest regardless of the detective's awareness that he was a parolee.

6

A similar argument regarding a probationer's diminished expectation of privacy was rejected by the United States Court of Appeals for the Fourth Circuit in *United States v. Hill*, ___ F.3d ___, 2015 WL 151613 (4th. Cir. 2015). The court indicated in *Hill* that, despite the probationer's diminished expectation of privacy, the government's interest in supervision did not excuse compliance with the Fourth Amendment's warrant requirement. ___ F.3d at ___, 2015 WL 151613 at *4, citing *United States v. Bradley*, 571 F.2d 787, 790 (4th Cir. 1978). Consequently, the court held in *Hill* that "law enforcement officers generally may not search the home of an individual on supervised release who is not subject to a warrantless search condition unless they have a warrant supported by probable cause." *Id.* at ___, 2015 WL 151613 at *5 (footnote omitted).

None of the cases cited by the State addressed a search that was conducted at a time when the police officer had no knowledge that the suspect was on parole. Consequently, even though *Feaster*, *Knights*, and *Samson* all address the quantum of suspicion necessary to conduct a lawful search of a known parolee, those cases do not hold that an otherwise unconstitutional search is authorized and beyond challenge on a motion to suppress if the police discover after the arrest that the suspect was on parole. It appears that no appellate opinion in Maryland has addressed that precise issue.

A handful of courts in other jurisdictions have addressed similar issues in analogous situations, and all have concluded that the reasonableness of a search must be viewed from the officer's perspective at the time of the search, and therefore, an illegal search cannot be

7

justified based on information discovered after the fact. These cases are consistent with the rule that, generally, the propriety of an arrest is to be analyzed based upon the facts known at the time of the arrest, as recognized in Professor LaFave's treatise on the Fourth Amendment:

> It is axiomatic that hindsight may not be employed in determining whether a prior arrest or search was made upon probable cause. If the action was taken without a warrant, the information to be considered is "the totality of facts" available to the officer at the time of the arrest or search; . . . .

2 WAYNE LAFAVE, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.2(d) (2012) (footnotes omitted).

In *People v. Sanders*, 31 Cal. 4th 318, 73 P.3d 496 (Cal. 2003), the Supreme Court of California held that a warrantless search of the home of a suspect who was a parolee who had expressly consented to warrantless searches of his home as a condition of parole was unlawful because the officers were unaware of the parole status when they conducted the search. *Sanders*, 73 P.3d at 507-08. The only issue on appeal was "whether the search was lawful because [the suspect] was on parole, despite the fact that the officers were unaware of [his] parole status when they conducted the search." *Id*. at 499–500. The government argued in *Sanders* that parolees have a diminished expectation of privacy, and that the officer's knowledge of the parole condition (or lack of knowledge thereof) was immaterial to the legality of the search. *Id*. The *Sanders* court rejected the government's argument and held that the reasonableness of the search had to be evaluated "from the circumstances known to the officer when the search was conducted." *Id*. at 508. Because the information

8

known to the officers at the time was insufficient to provide a basis for conducting a warrantless search of the suspect's home, the *Sanders* court concluded that the search was unconstitutional. The court commented that, if it were to permit the police to justify a warrantless search by pointing to information discovered subsequent to the search, such a practice "would legitimize unlawful police conduct." *Id*. at 507. Accordingly, the court stated: "[W]e hold that an otherwise unlawful search of the residence of an adult parolee may not be justified by the circumstance that the suspect was subject to a search condition of which the law enforcement officers were unaware when the search was conducted." *Id*. at 507-08. *Accord In re Jaime P.*, 40 Cal. 4th 128, 130, 146 P.3d 965, 966 (Cal. 2006) (applying rationale of *Sanders* to a warrantless search of a juvenile probationer whose probationary status was unknown to the officer at the time of the search).

In 2006, *Sanders* was cited with apparent approval in Justice Thomas's majority opinion in *Samson*, in response to Justice Stevens's dissent which expressed the concern that permitting suspicionless searches of parolees would give police unfettered discretion to harass and annoy parolees. *Samson*, 547 U.S. at 856 n.5 (Justice Thomas wrote: "Under California precedent, we note, an officer would not act reasonably in conducting a suspicionless search absent knowledge that the person stopped for the search is a parolee."). In addition, other courts have adopted the *Sanders* court's reasoning when faced with a similar issue. *See United States v. Caseres*, 533 F.3d 1064, 1075-76 (9th Cir. 2008) ("The [parolee's] search condition validates a search only if the police had advance knowledge that

9

the search condition applied before they conducted the search."); *Moreno v. Baca*, 431 F.3d 633, 641 (9th Cir. 2005) ("[A]n officer must know of a detainee's parole status before that person can be detained and searched pursuant to a parole condition.").

In *Moreno v. Baca*, the United States Court of Appeals for the Ninth Circuit addressed whether a suspicionless arrest could be retroactively justified by the fact that the suspect had an outstanding warrant for his arrest that the arresting officer was not aware of. *Moreno*, 431 F.3d at 638. Two police officers arrested Moreno without probable cause after observing him walking down the street in Los Angeles. *Id.* at 636–37. After Moreno was placed under arrest, one of the officers ran a warrant check and learned that there was an outstanding warrant for Moreno's arrest. *Id*. at 636. Moreno sued the two officers, claiming that, because the officers lacked probable cause to arrest him, the arrest violated his Fourth Amendment right to be free from unreasonable searches and seizures. *Id*. at 637. The officers argued that, because there was an outstanding warrant for Moreno when he was arrested, the arrest was lawful even though they were unaware of the warrant's existence. *Id*. The Ninth Circuit rejected the officers' arguments, holding that the legality of the search was determined based on the information the officers had at the time of the arrest, and that the arrest could not be justified with new information obtained after the fact. *Id*. at 641.

The *Moreno* court relied upon a series of Supreme Court cases establishing that the legality of an arrest must be analyzed based on the facts and circumstances known to the officer at the time the arrest occurs. *Id*. at 639 (citing *Scott v. United States*, 436 U.S. 128,

10

137 (1978) ("[A]lmost without exception in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him."), and *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990) (holding that "factual determinations bearing upon search and seizure" must be judged against an "objective standard" based on "facts available to the officer at the moment")). *Cf. Ashcroft v. al-Kidd*, ___ U.S. ___ , 131 S.Ct. 2074, 2080 (2011) ("Fourth Amendment reasonableness 'is predominantly an objective inquiry.' We ask whether 'the circumstances, viewed objectively, justify [the challenged] action.' If so, that action was reasonable '*whatever* the subjective intent' motivating the relevant officials." (Citations omitted.))

The Supreme Court of Ohio confronted a similar issue in *State v. Gardner*, 135 Ohio St. 3d 99, 984 N.E.2d 1025, 1039 (Ohio 2012). The Ohio court rejected the government's contention that the belated discovery of an outstanding arrest warrant could cure an unlawful, suspicionless arrest. The *Gardner* court stated: "We will not condone the notion that the unlawfulness of an improper arrest or seizure can always be purged by the fortuitous subsequent discovery of an arrest warrant." *Id*.

The conclusions of the Ohio Supreme Court and the Ninth Circuit regarding the use of later-acquired information to justify a warrantless arrest are also consistent with the holding of the United States District Court for the Northern District of Illinois in *Bruce v. Perkins*, 701 F. Supp. 163 (N.D. Ill. 1988). That court opined that the government's

11

contention in that case that an unlawful arrest could be justified after the fact by the discovery of an outstanding arrest warrant was "preposterous," and the court cautioned that "the Fourth Amendment does not countenance such post hoc rationalization." *Bruce*, 701 F. Supp. at 165. *See also* 3 WAYNE LAFAVE, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 5.1(h) n.387 (2012) ("[A]n arrest without a warrant is not converted into an arrest with a warrant merely because after the arrest the police learn there is an outstanding warrant on the defendant for some other offense.").

Although none of the cases discussed above speaks directly to the question presented in this case, they all stand for the more general proposition that the government cannot justify an officer's performance of a warrantless search with later-discovered information that, if known to the officer at the time, would have justified a search or arrest. The State presents no case holding to the contrary, and asserts that *Sanders* was simply wrongly decided. But we are persuaded by the reasoning of the cases which have held that a constitutionally defective search cannot be justified after the fact by information unknown to the officer at the time of the warrantless search. Accordingly, the fact that appellee was on parole does not validate Detective Wisniewski's search that was conducted without probable cause.

This result is consistent with the policy goals underlying the exclusionary rule, namely, discouraging police misconduct. *See Herring v. United States,* 555 U.S. 135, 139-40 (2009) (the exclusionary rule is "'designed to safeguard Fourth Amendment rights generally through its deterrent effect'" (quoting *United State v. Calendra*, 414 U.S. 338, 348 (1974))).

12

As the California Supreme Court noted in *Sanders*, permitting police to use a suspect's parolee status to justify a search even when the officer was unaware of that status would serve "to encourage unlawful police conduct, especially in neighborhoods in which a higher than average number of persons are on probation." *Sanders*, 73 P.3d at 508. Officers could simply search and arrest people without probable cause, and if the officers were lucky enough to have searched a person who happened to be a parolee, there would be no bar to introducing any evidence found as a result of the search. *See In re Jaime P., supra*, 40 Cal. 4th at 138, 146 P.3d at 972 ("To allow searches of probationers or parolees based solely on the officer's supposed subjective 'belief' that legal cause existed for a search predictably would invite repeated harassment and arbitrary searches."). In our view, such conduct by the government would be incompatible with the Fourth Amendment's protection against unreasonable searches and seizures.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY BALTIMORE COUNTY.**