OPINION
{¶ 1} Defendant, Sherman Ellis, appeals from his conviction and sentence for trafficking in marijuana.
 {¶ 2} Defendant was indicted on one count of trafficking in marijuana, R.C. 2925.03(A)(2), and one count of possession of criminal tools, R.C. 2923.24(A), following a seizure by campus police of drugs that were found in Defendant's dormitory room at Central State University. Defendant filed a motion to suppress the evidence that was seized. The trial court overruled Defendant's motion to suppress following a hearing. Defendant then entered a plea of no contest to the trafficking in marijuana charge. In exchange, the State dismissed the criminal tools charge. The trial court found Defendant guilty of the marijuana charge and on his conviction sentenced Defendant to five years of community control sanctions and a two hundred fifty dollar fine.
 {¶ 3} Defendant timely appealed to this court from his conviction and sentence, challenging the trial court's decision overruling his motion to suppress evidence.
FIRST ASSIGNMENT OF ERROR
 {¶ 4} "THE TRIAL COURT ERRED WHEN IT OVERRULED MR. ELLIS'S MOTION TO SUPPRESS."
 {¶ 5} In a motion to suppress the trial court assumes the role of the trier of facts. In reviewing the trial court's decision on a motion to suppress, the Court of Appeals is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. Accepting the facts as found by the trial court as true, the Court of Appeals must then independently determine as a matter of law, without deference to the trial court's conclusion, whether those facts meet the applicable legal standard. State v.Satterwhite, (1997), 123 Ohio App.3d 322.
 {¶ 6} The facts found by the trial court are as follows:
 {¶ 7} "Sherman Ellis, on October 7, 2004 was a student attending Central State University. The Defendant was residing on campus in a dormitory room located at 332 Foundation Hall on the campus of Central State University, Wilberforce, Greene County, Ohio. As a student at Central State University the Defendant was subject to the safety and security policies and procedures set forth by the University. These are identified in State's Exhibit 1. Further testimony was given indicating the Defendant had agreed to recognize and be subject to the safety and security policies and procedures while a resident on the campus at Central State University. Further, the Court finds that the Defendant is not contesting the applicability of the safety and security policies and procedures set forth herein.
 {¶ 8} "Pursuant to these safety policies and procedures a Resident Assistant in the dormitory in which the Defendant resided was acting in accordance with the Resident's Hall Health and Safety checks portion of the policy and procedure by entering the room of the Defendant to conduct an unannounced safety inspection. These inspections were done on a regular basis by Resident Assistants and were not performed for the purpose of obtaining evidence solely for the purpose of criminal prosecution. These searches were conducted consistent with the policies and procedures set forth by the University.
 {¶ 9} "Upon entering the room, and joined shortly thereafter by another Resident Assistant, a beer can was discovered on a desk top. Possession of alcoholic beverages is a violation of the University policies and procedures. During the course of obtaining the beer the Resident Assistants observed an open drawer in the desk and could smell as well as see bags as what he referred to as `weed' which he identified as marijuana.
 {¶ 10} "Central State University police officers were then notified, who upon their later arrival observed while the Resident Assistants completed their safety search and inspection. As a result of the inspection and search the Resident Assistants turned over several items obtained from the dormitory to the Central State Police Department. While the police officers were at the dormitory after being notified, they did not participate in the search which was conducted by the Resident Assistants. The Resident Assistants conducted the administrative search pursuant to the Resident's Hall Health and Safety checks pursuant to the University residence policies and the code of student conduct."
 {¶ 11} In overruling Defendant's motion to suppress evidence, the trial court concluded that the warrantless search of Defendant's dormitory room in accordance with Central State University's policy and procedures governing residence halls was reasonable for Fourth Amendment purposes because it fit within the administrative search exceptions to the Fourth Amendment's warrant requirement.
 {¶ 12} The Fourth Amendment to the United States Constitution insures the right of people to be free in their persons, houses, papers and effects from unreasonable searches and seizures. Cityof Athens v. Wolf (1974), 38 Ohio St.2d 237. Evidence obtained by searches conducted in violation of the Fourth Amendment is inadmissible. Mapp v. Ohio (1961), 367 U.S. 643, 81 S.Ct. 1684,6 L.Ed.2d 1081. Warrantless searches are per se unreasonable under the Fourth Amendment, subject to only a few well established exceptions. Katz v. United States (1967),389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. The State bears the burden of proving the validity of a warrantless search by demonstrating the applicability of one of the well-recognized exceptions to the warrant requirement. State v. Kessler (1978),53 Ohio St.2d 204.
 {¶ 13} A college student's dormitory room is entitled to the same protection against unreasonable search and seizure that is afforded to a private home for purposes of the Fourth Amendment.City of Athens v. Wolf, supra. In that regard it must be noted that the state cannot condition attendance at a state college on a waiver of constitutional rights, nor can it require students to waive their right to be free from unreasonable searches and seizures as a condition of occupancy of a college dormitory room.Smyth v. Lubbers (W.D. Mich. 1975), 398 F.Supp. 777; Piazzolav. Watkins (5th Cir. 1971), 442 F.2d 284.
 {¶ 14} The Fourth Amendment limits only official government behavior or state action: it does not regulate searches by or other conduct of private persons. Burdeau v. McDowell (1921),256 U.S. 465; Coolidge v. New Hampshire (1971), 403 U.S. 443,91 S.Ct. 2022, 29 L.Ed.2d 564; State v. Dillon (Jan. 23, 1991), Miami App. No. 90-CA-07. The mere fact that evidence found and obtained during a search by a private person is ultimately turned over to the police does not destroy the private nature of the search and render it official government action subject to the exclusionary rule. State v. Ford (Oct. 9, 1987), Lucas App. No. L-86-338; State v. Hammett (Feb. 21, 1985), Cuyahoga App. Nos. 48675 and 48676. If a private person acts as the agent of the police, however, the result is different. Official participation in the planning or implementation of a private person's efforts to secure evidence may taint the operation sufficiently as to require suppression of the evidence. The test of government participation is whether under all the circumstances the private individual must be regarded as an agent or instrument of the state. Dillon, supra; Katz, Ohio Arrest, Search and Seizure (2005), Section 27:12 at p. 604.
 {¶ 15} The evidence presented in this case demonstrates that the University's Resident Assistants entered Defendant's dormitory room and the rooms of other students to determine whether students were bringing prohibited items such as alcohol or drugs to their rooms, a common occurrence during the school's homecoming celebrations. The search was conducted in accordance with Central State University's policies and procedures governing residence halls, which authorizes the Residence staff to inspect student rooms at any time to determine compliance with the University's safety and hygiene policies governing residence halls. Therefore, as the trial court found, the search the Resident Life staff performed which yielded the marijuana that campus police seized was an administrative search by private persons, and therefore not a search subject to theFourth Amendment's warrant requirement.
 {¶ 16} Defendant argues that because campus police were in the room while the Resident Assistants conducted their search, and the police officers told the staff members to place the evidence they found on a desk or table in the room, that the Resident Assistants acted as agents of police in performing their search. While the question is a close one, we believe that more is required to show agency. There must be some evidence that police directed private persons where and how to search and what to look for. That's lacking here because the officers merely stood by in Defendant's room while the Resident Assistants searched it. However, that does not resolve the Fourth Amendment issue that Defendant's motion to suppress presented.
 {¶ 17} The problem arises in this case because, after the resident advisors initially discovered marijuana in Defendant's room and notified campus police, the campus police then came to the scene and entered Defendant's room. Police remained inside Defendant's room and observed while the Resident Assistants continued their search. After the Resident Assistants had completed their search and placed the contraband they discovered in a central location in the room, as the officers had directed, the police then seized and removed that contraband from Defendant's room.
 {¶ 18} By entering Defendant's dormitory room, campus police infringed upon the reasonable expectation of privacy that Defendant had in that place which, as we previously mentioned, is entitled to the same level of protection against unreasonable search and seizure as a private home. Athens v. Wolf. In order to lawfully enter Defendant's room, police needed either a warrant, which they did not have, or an established exception to the warrant requirement. None applies in this case, and the State argued none in opposition to Defendant's motion to suppress.
 {¶ 19} There was no consent given by Defendant for police to enter his room. He was not even present during the search. The plain view exception does not apply because police did not observe the contraband until after they had unlawfully entered Defendant's room, and any intrusion affording the plain view observation must otherwise be lawful. Coolidge v. New Hampshire
(1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564. Neither does the exigent or emergency circumstances exception justify the entry, for instance to prevent the concealment or destruction of evidence. The Resident Assistants were in the room, Defendant was not, and Defendant could have easily been kept out of the room by police and the evidence preserved until police had secured a warrant.
 {¶ 20} We conclude that by entering Defendant's dormitory room without a warrant or an applicable recognized exception to the warrant requirement, and by further seizing and removing from that room contraband discovered by the Resident Assistants during their private search of that room, campus police violated Defendant's Fourth Amendment rights. Accordingly, the trial court erred when it denied Defendant's motion to suppress evidence.
 {¶ 21} The assignment of error is sustained. The judgment of the trial court will be reversed and this case remanded for further proceedings consistent with this opinion.
Wolff, J. and Donovan, J., concur.