[Cite as *State v. Sealey*, 2019-Ohio-3692.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28206 |
| | : | |
| v. | : | Trial Court Case No. 2014-CR-4096 |
| | : | |
| ERIC SEALEY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of September, 2019.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

JON PAUL RION, Atty. Reg. No. 0067020, KEVIN M. DARNELL, Atty. Reg. No. 0095952, and CATHERINE BREAULT, Atty. Reg. No. 0098433, 130 West Second Street, Suite 2150, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Eric Sealey appeals his conviction for the following offenses: Count I, possession of cocaine (equals or exceeds 100 grams), in violation of R.C. 2925.11(A), a felony of the first degree; Count II, possession of heroin, in violation of R.C. 2925.11(A), a felony of the fifth degree; and Count III, having weapons while under disability, in violation of R.C. 2923.13(A)(3), a felony of the third degree. Sealey filed a timely notice of appeal with this Court on November 15, 2018.

{¶ 2} The record establishes that on December 16, 2013, a housekeeper employed by at the Extended Stay Hotel in Butler Township was cleaning Room 109. Upon emptying the garbage can in the room, the housekeeper observed a handgun and what appeared to be contraband narcotics located in the bottom of the garbage can. The housekeeper immediately contacted the hotel manager and informed her of the discovery of the gun and drugs. The manager then retrieved the hotel master key and used it to gain entrance to Room 109, wherein she was able to observe what the housekeeper had discovered. The hotel manager contacted Bureau of Criminal Investigations Special Agent Richard Miller and informed him that a gun and drugs had been discovered in one of the hotel's rooms.

{¶ 3} Agent Miller testified that he was part of the Miami Valley Bulk Smuggling Task Force. The task force was comprised of local and regional law enforcement officers whose job involved the investigation of illegal drug and gun activity occurring on Miller Lane in Butler Township. In order to facilitate their investigations, Agent Miller and other members of the task force would routinely contact hotel managers in the area and inform them of the nature of the task force's work. The task force would also ask the managers

to contact them if any suspicious or illegal activity was observed at the hotels. The record establishes that the hotel manager had provided information regarding illegal activity on the hotel premises to the task force on several prior occasions and had been financially compensated for the information she provided at least twice, being paid approximately $50 on each occasion. Based upon her prior relationship with the task force, the hotel manager contacted Agent Miller on December 16, 2013, and reported the gun and drugs located in Room 109. Agent Miller instructed the manager to place all of the alleged contraband back into the garbage can and leave the room looking as undisturbed as possible. The manager placed the gun and the drugs back in the garbage can and left the room. Agent Miller also instructed the manager to "rekey" the lock on the door to the room, essentially locking the occupants out. The manager testified that, after calling the task force, she had no further interaction with the task force or the Defendant until she was later paid $50 by Agent Miller for providing them with information.

{¶ 4} Agent Miller obtained the hotel guest registry for that day and found that Room 109 had been rented by a woman named Felicia Oglesby several days earlier on December 7, 2013. Upon further investigation, Agent Miller discovered that a known associate of Oglesby was the defendant-appellant, Eric Sealey, who had prior convictions for drug possession and trafficking. In light of this information, as well as the housekeeper's discovery of a gun and drugs in the hotel room, Agent Miller was able to obtain a warrant to search Room 109. The warrant also provided the task force with the authority to search the persons of Sealey and Oglesby.

{¶ 5} Once the search warrant had been obtained, members of the task force maintained surveillance of Room 109, waiting for Sealey and/or Oglesby to return.

Shortly thereafter, Sealey and Oglesby returned to the hotel room but were unable to gain access because the lock had been rekeyed. Sealey and Oglesby then went to the hotel office to get another key. After being provided with a working key, Sealey and Oglesby walked back to Room 109 at which point they were immediately detained by the task force before they could gain access to the room.

{¶ 6} Pursuant to a patdown, Officer Samuel Hemingway discovered a small baggie of what appeared to be cocaine in one of Sealey's front pants pockets. The task force then gained access to the hotel room, wherein the following items were seized: 1) 262 grams of cocaine; 2) a loaded handgun; 3) a small quantity of heroin in the bottom of the trashcan; 4) small quantities of cocaine, heroin, and marijuana on the nightstand; 5) approximately $2,400 in cash on the nightstand; 6) a digital scale and plastic baggies above the microwave; 7) men's clothing located on a chair next to the nightstand; and 8) a Vectren utility bill addressed to Sealey on the desk in the room. Lab analysis later confirmed that Sealey was a major contributor of DNA found on the large bag of cocaine as well as the baggie of heroin found in the bottom of the garbage can.

{¶ 7} On April 3, 2015, Sealey was indicted for Count I, possession of cocaine (equals or exceeds 100 grams); Count II, possession of heroin; and Count III, having weapons while under disability (prior drug conviction). At his arraignment on April 21, 2015, Sealey pled not guilty to the charged offenses.

{¶ 8} On April 24, 2015, Sealey filed a motion to suppress the physical evidence seized from Room 109 pursuant to the search warrant issued on December 16, 2013. A hearing was held on said motion on July 9 and August 6, 2015. On August 24, 2015, the trial court issued a decision overruling Sealey's motion to suppress, finding that the

search warrant was supported by probable cause, that the information supporting the probable cause determination was not stale, and that the warrant identified the persons and place to be searched with sufficient particularity.

{¶ 9} Before trial, evidence was discovered that the hotel manager had later been financially compensated by the task force for the information she provided to them, which led to the issuance of the search warrant and subsequent search of Sealey's person and the hotel room wherein the contraband was discovered. Thus, Sealey filed a second motion to suppress in which he argued that the manager had been a paid police informant who was acting as an "agent of the state." He asserted that her initial warrantless entry into the hotel room was unlawful. A second hearing was held, and in a decision issued on January 4, 2018, the trial court overruled Sealey's second motion to suppress, concluding that the evidence established that the manager was *not* acting as an agent of the state when she entered the hotel room in order to verify the information provided by the housekeeper. Rather, the trial court found that the manager was acting pursuant to her duties as an employee of the hotel and was not under any direction or control of law enforcement when she initially entered the hotel room.

{¶ 10} Prior to trial, Sealey elected to have the weapon while under disability charge (Count III) tried to the bench. Sealey's jury trial on the remaining counts began on August 28, 2018, and ended on August 31, 2018, with the jury finding him guilty of Count I, possession of cocaine, and Count II, possession of heroin. The trial court later found Sealey guilty of having a weapon while under disability at a separate bench trial.

{¶ 11} On September 14, 2018, Sealey filed a motion for a new trial wherein he alleged juror misconduct, and that Agent Miller testified differently at trial than he did at

the second suppression hearing. In a decision issued on November 2, 2018, the trial court overruled Sealey's motion for new trial. On November 14, 2018, the trial court issued a judgment entry sentencing Sealey to a mandatory 11 years in prison for Count I, possession of cocaine (equals or exceeds 100 grams); 12 months in prison for Count II, possession of heroin; and 12 months for Count III, having a weapon while under disability. The trial court ordered all of the sentences to be served concurrently for an aggregate sentence of 11 years in prison.

{¶ 12} It is from this judgment that Sealey now appeals.

{¶ 13} Sealey's first assignment of error is as follows:

THE TRIAL COURT ERRED IN NOT SUPPRESSING THE EVIDENCE OF

THE SEARCH BECAUSE [THE HOTEL MANAGER] WAS ACTING AS AN

AGENT OF THE STATE.

{¶ 14} In his first assignment, Sealey contends that the trial court erred when it overruled his second motion to suppress. Specifically, Sealey argues that the evidence adduced at the hearing established that the hotel manager was acting as an agent of the state when she initially entered Sealey's hotel room to confirm the housekeeper's observation of a gun and illegal drugs in the room. In part, this argument was based upon the fact that the manager was later paid $50.

{¶ 15} As this Court has previously noted:

In ruling on a motion to suppress, "the trial court assumes the role of the

trier of fact, and, as such, is in the best position to resolve questions of fact

and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio

App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994), citing *State v. Clay*, 34

Ohio St.2d 250, 298 N.E.2d 137 (197[3]). Accordingly, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*; *State v. Shipp*, 2d Dist. Montgomery No. 24933, 2012-Ohio-6189, ¶ 11.

*State v. Mobley*, 2d Dist. Montgomery No. 26044, 2014-Ohio-4410, ¶ 11.

**{¶ 16}** " 'The fourth amendment protects the privacy and personal security of individuals from arbitrary and oppressive interference by limiting the search-and-seizure authority of law enforcement officials.' " *State v. Gardner*, 135 Ohio St.3d 99, 2012-Ohio-5683, 984 N.E.2d 1025, ¶ 17, quoting *Wanger v. Bonner*, 621 F.2d 675, 681 (5th Cir.1980). "In a Fourth Amendment context, the judicially-created exclusionary rule, created to deter illegal police conduct, provides that evidence obtained through unconstitutional searches and seizures is subject to exclusion and prospectively inadmissible." *State v. Starkey*, 11th Dist. Portage No. 2012-P-0038, 2012-Ohio-6219, ¶ 25, citing *United States v. Leon*, 468 U.S. 897, 916, 104 S.Ct. 3405 (1984).

**{¶ 17}** Generally, unlawful searches and seizures conducted by private individuals are outside constitutional protection because the Fourth Amendment protects individuals from state action, not a private action. *State v. Morris*, 42 Ohio St.2d 307, 316, 329 N.E.2d 85 (1975). "The mere fact that evidence found and obtained during a search by a private person is ultimately turned over to the police does not destroy the private nature of the search and render it official government action subject to the exclusionary rule." *State v.*

*Ellis*, 2d Dist. Greene No. 05CA78, 2006-Ohio-1588, ¶ 14.

{¶ 18} Nevertheless, when the police become involved in a private individual's search, the probable-cause and warrant requirements of the Fourth Amendment may apply; thus the courts must look to the level of police involvement to determine whether it was a private search or an unreasonable police search. *Morris* at 316; *State v. Willis*, 169 Ohio App.3d 364, 2006-Ohio-5754, 862 N.E.2d 906, ¶ 28 (2d Dist.). "Official participation in the planning or implementation of a private person's efforts to secure evidence may taint the operation sufficiently as to require suppression of the evidence. The test of government participation is whether under all the circumstances the private individual must be regarded as an agent or instrument of the state." *Ellis* at ¶ 14, citing *State v. Dillon,* 2d Dist. Miami No. 90-CA-07, 1991 WL 6347 (Jan. 23, 1991) and Katz, *Ohio Arrest, Search and Seizure* Section 27:12 (2005). Although the state usually bears the burden of proving that an exception to the warrant requirement exists when a warrantless search has occurred, the defendant bears the burden of proving that there was "sufficient governmental involvement in seemingly private conduct" to consider it a state search. *State v. Jedd*, 146 Ohio App.3d 167, 171-172, 765 N.E.2d 880 (4th Dist. 2001).

{¶ 19} When determining whether a search was state or private action, courts "have paid particular attention to whether or not the search in question was initiated by a private person and for private purposes." *Willis* at ¶ 30; *see also State v. Dillon*, 2d Dist. Miami No. 90-CA-07, 1991 WL 6347 (Jan. 23, 1991). Further, it is not enough that the police are present; "[t]here must be some evidence that police directed private persons where and how to search and what to look for." *Ellis* at ¶ 16. In other words, there must

be "a great deal of entanglement" between the conduct of the private individual and the police before the search can be considered state action. *State v. Cook,* 149 Ohio App.3d 422, 2002-Ohio-4812, 777 N.E.2d 882, ¶ 11 (2d Dist.).

{¶ 20} In the instant case, we agree with the trial court that the evidence adduced at the second suppression hearing failed to establish that the hotel manager was a state actor for the purposes of the Fourth Amendment, and therefore, that the discovery of the gun and drugs triggered the constitutional privilege against unreasonable searches. Accordingly, we find that the trial court did not err when it overruled Sealey's motion to suppress the evidence discovered in the hotel room. As previously stated, the housekeeper found the gun and suspected drugs in the garbage can while conducting routine room cleaning, which is necessitated at any hotel. The housekeeper had not been instructed to search the room for drugs or contraband, nor was she acting pursuant to any directive from the task force. When the hotel manager later entered the hotel room, she did so as a result of the housekeeper's discovery. The hotel manager had the authority to enter the room and was acting pursuant to her management responsibilities. After observing the gun and identifying possible drugs, the manager contacted Agent Miller. The manager did not become a state agent by rekeying the room at Agent Miller's directive to secure the items. Agent Miller was then able to obtain a warrant, and the search of Room 109 was conducted pursuant to that valid warrant.

{¶ 21} In light of all pertinent circumstances, there was no evidence to indicate that either the hotel manager or the housekeeper "acted as an 'instrument' of the state.' " *Cook* at ¶ 11. Nor was there any evidence that the task force engaged in "[o]fficial participation in the planning or implementation of" the discovery of the gun and drugs in Room 109.

*Ellis* at ¶ 14.   The fact that the manager had been compensated for providing information to the task force in the past did not transform her into a state actor on December 16, 2013, when she responded to the housekeeper's discovery of the gun and illegal drugs.   Simply put, the manager's actions were primarily in the fulfillment of her employment responsibilities.   As manager, she had an interest in maintaining a safe and drug-free environment for the guests of the hotel.   The evidence adduced at the suppression hearing clearly established that the manager was *not* acting at the behest of Agent Miller or any other member of the task force when she initially entered the hotel room to confirm the presence of a gun and illegal drugs.

{¶ 22} Although the manager was rewarded for providing the task force with information about what had been discovered, there was no evidence that she acted pursuant to a desire to be compensated, nor did such minimal compensation ($50) elevate her to the status of an agent of the state.   Therefore, the manager's observation of the gun and drugs in Room 109 was done pursuant to her duties as an employee of the hotel, and not at the direction or under the authority of the State.   Thus, we find that the trial court did not err when it overruled Sealey's motion(s) to suppress.

{¶ 23} Sealey's first assignment of error is overruled.

{¶ 24} Sealey's second assignment of error is as follows:

THE TRIAL COURT ERRED IN NOT RECONSIDERING THE MOTION TO SUPPRESS AND DEFERRING TO THE APPEALS COURT.

{¶ 25} In his second assignment, Sealey argues that the trial court erred when it failed to reconsider his second motion to suppress in light of Agent Miller's testimony at trial, which Sealey contends was so materially different from his testimony at the second

suppression hearing that the trial court would have decided the second motion to suppress differently.

{¶ 26} Initially, we note that Sealey never filed a motion to reconsider the trial court's decision overruling his second motion to suppress. Instead, Sealey asserts that the motion for a new trial that he filed after the verdicts "implicitly asked the trial court to reconsider its decision on the Motion to Suppress based on conflicting trial testimony from Agent Miller." Nowhere in Sealey's motion for a new trial did he ask the trial court to reconsider its decision overruling his second motion to suppress. Although he did mention the alleged differences between Agent Miller's testimony at the second suppression hearing and at trial, Sealey only advanced that argument in support of his motion for new trial, not a motion for reconsideration of his second motion to suppress. Accordingly, we find that Sealey's motion for a new trial was just what it purported to be, and cannot be reasonably interpreted to be a motion for reconsideration of his second motion to suppress.

{¶ 27} Furthermore, even if Sealey's motion for a new trial could somehow be construed as an "implicit" motion for reconsideration of his second motion to suppress, the record establishes that Agent Miller's testimony at the second suppression hearing did not conflict with his trial testimony to the degree that Sealey suggests.

{¶ 28} At the second suppression hearing, the hotel manager testified that when she initially contacted Agent Miller about the gun and drugs in Room 109, Agent Miller told her to "put everything back the way it was, secure the room, and don't go back in there." Supp. Tr. 77. Agent Miller testified at the second suppression hearing that he "did not recall" directing the manager to "put everything back the way it was." Rather, Agent

Miller testified that he told her "to rekey the door and not go back in there." Supp. Tr. 139. Agent Miller later testified at the suppression hearing that he told the manager "if you guys are in [the hotel room], maybe I said to put it back but I did not tell her to go back into the room." *Id.*

{¶ 29} At trial, Agent Miller testified that, during the initial phone call with the manager, he stated, "[i]f you still have access to it, put everything back the way it is and rekey the room for me. * * * I said if you are in – still inside the room, replace everything as it was so it looks like nobody ever touched it and then rekey the room and leave it alone." Trial Tr. 669-670. On cross-examination, Agent Miller testified that he told the manager to put everything back the way it was *if she was still in the room*; however, if she had already left the room, he directed her to *not* reenter the hotel room. Trial Tr. 687-689.

{¶ 30} Upon review, we conclude that Agent Miller's testimony from the second suppression hearing was not materially different from his trial testimony. Furthermore, any apparent discrepancy in Agent Miller's testimony related to the directions he gave to the hotel manager *after* she had already entered Sealey's hotel room of her own accord and observed the gun and illegal narcotics. Therefore, even if Agent Miller's testimony could be viewed as conflicting, the conflict would not have affected the trial court's decision regarding the ultimate issue at the second suppression hearing, namely whether the manager was operating as an agent of the state when she entered Sealey's hotel room to confirm the housekeeper's report of finding a handgun and illegal drugs in the garbage can. Therefore, the trial court did not err when it rejected Sealey's arguments that Agent Miller's trial testimony conflicted with his testimony at the second suppression hearing to such a degree as to require a new trial or reconsideration of its decision

overruling Sealey's second motion to suppress.

**{¶ 31}** Sealey's second assignment of error is overruled.

**{¶ 32}** Sealey's third and final assignment of error is as follows:

THE TRIAL COURT ERRED IN NOT GRANTING A NEW TRIAL BASED

OF [sic] THE JUROR MISCONDUCT.

**{¶ 33}** In his final assignment, Sealey contends that the trial court erred when it refused to grant his Crim.R. 33 motion for a new trial based upon allegations of juror misconduct. The alleged juror misconduct Sealey cites is the fact that a juror approached the judge after the trial ended and stated that she did not agree with the verdict. Specifically, after the other jurors left, she entered the judge's chambers, handed him some notes she took during the trial, and stated that although she believed Sealey committed the crimes for which he was charged, she did not believe that the State had proven its case beyond a reasonable doubt.

**{¶ 34}** Crim.R. 33(A)(2) provides that "a new trial may be granted on motion of the defendant for * * * misconduct of the jury * * *." We review a trial court's ruling on a motion for a new trial for an abuse of discretion. *State v. Taylor*, 2d Dist. Montgomery No. 23916, 2011-Ohio-2563, ¶ 13. The term "abuse of discretion" implies that the trial court's decision was unreasonable, arbitrary or unconscionable. *State v. Griffin*, 2d Dist. Montgomery No. 24001, 2012-Ohio-503, ¶ 9. "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." (Citation omitted.) *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have

found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

**{¶ 35}** " * * * [M]isconduct of a juror will not be presumed, but must be affirmatively proved. The law presumes proper conduct on the part of the jury. Clear and positive evidence 'aliunde' is necessary to overcome this presumption." *State v. Sapp*, 10th Dist. Franklin No. 94APA10-1524, 1995 WL 491390, *7 (Aug. 15, 1995), citing *Lund v. Kline*, 33 Ohio St. 317, 320, 13 N.E.2d 575 (1938).

**{¶ 36}** Regardless of the nature of the juror's assertions, Evid.R. 606(B) plainly precluded Sealey from obtaining a new trial based upon them. The rule "governs the competency of a juror to testify at a subsequent proceeding concerning the original verdict." *State v. Schiebel*, 55 Ohio St.3d 71, 75, 564 N.E.2d 54 (1990). It provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. A juror's affidavit or evidence

of any statement by the juror concerning a matter about which the juror would be precluded from testifying will not be received for these purposes. Evid.R. 606(B).

{¶ 37} "This requirement of outside evidence of misconduct is the aliunde rule[.]" *State v. Kirkby*, 9th Dist. Summit Nos. 27381, 27399, 2015-Ohio-1520, ¶ 11. Aliunde evidence is other distinct or independent evidence beyond that offered by a juror himself or herself. *State v. Gleason*, 110 Ohio App.3d 240, 245, 673 N.E.2d 985 (9th Dist.1996). As the Ohio Supreme Court explained in *Schiebel*:

> In order to permit juror testimony to impeach the verdict, a foundation of extraneous, independent evidence must first be established. This foundation must consist of information from sources other than the jurors themselves, * * * and the information must be from a source which possesses firsthand knowledge of the improper conduct. One juror's affidavit alleging misconduct of another juror may not be considered without evidence aliunde being introduced first. * * * Similarly, where an attorney is told by a juror about another juror's possible misconduct, the attorney's testimony is incompetent and may not be received for the purposes of impeaching the verdict or for laying a foundation of evidence aliunde.

*Schiebel* at 75-76. "The purpose of the aliunde rule is to maintain the sanctity of the jury room and the deliberations therein. * * * The rule is designed to ensure the finality of jury verdicts and to protect jurors from being harassed by defeated parties." *State v. Hessler*, 90 Ohio St.3d 108, 123, 734 N.E.2d 1237 (2000), citing *State v. Rudge*, 89 Ohio App.3d 429, 438-439, 624 N.E.2d 1069 (1993).

{¶ 38} Initially, we note that Evid.R. 606(B) contains three basic parts: (1) the rule excludes inquiry into juror thought process or related statements or the reasoning leading to a juror's conclusions, (2) the rule precludes juror testimony (or affidavit) in the absence of some outside evidence (the actual aliunde part of the rule), and (3) the rule permits juror evidence of threats, bribes, or officer-of-the-court misconduct without limitation. (This third section is inapplicable in the instant case.)

{¶ 39} "[I]t could be a dangerous precedent to establish in this state were we to announce the principle that jurors, after their separation, should be allowed to change their verdict to conform to their real intention, or to impeach their verdict by any attempt to prove that it was rendered under a misunderstanding of the court's charge." *State v. Kretzer*, 2d Dist. Montgomery No. 12910, 1992 WL 80787, *1, citing *Long v. Cassiero*, 105 Ohio St. 123, 126, 136 N.E. 888 (1922).

{¶ 40} Sealey did not present any independent evidence indicating that the jury's deliberative process was tainted. We note that defense counsel did not choose to poll the jury after the verdicts were rendered. We also note that the affidavit from defense counsel attached to the motion for new trial did not contain any mention of outside evidence that would form the basis for a motion for new trial. *See State v. Bones*, 2d Dist. Montgomery No. 26017, 2015-Ohio-784. Therefore, absent any additional independent evidence, the trial court did not abuse its discretion when it overruled Sealey's motion for new trial.

{¶ 41} Sealey's third and final assignment of error is overruled.

{¶ 42} All of Sealey's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Jon Paul Rion
Kevin M. Darnell
Catherine Breault
Hon. Michael W. Krumholtz