DECISION AND JUDGMENT ENTRY
{¶ 1} Terry L. Koueviakoe appeals the entry of the Gallia County Court of Common Pleas overruling his motion to suppress. Koueviakoe argues that the trial court erred when it overruled his motion to suppress the cocaine and crack cocaine obtained from a search of his person and vehicle. He claims that the Trooper did not have reasonable suspicion of other criminal activity to detain him at the scene of the traffic stop until a drug-sniffing dog could arrive. Specifically, Koueviakoe argues that the trial court erred in considering the testimony of Detective Brandon Chapman as a basis for determining that the confidential informant provided credible information. Because we find that: (1) Koueviakoe failed to object to Det. Chapman's testimony regarding the undercover officer's prior dealings with the confidential informant; and (2) Trooper Jacks had a reasonable, articulable suspicion to justify the investigatory stop of Koueviakoe's car and detain him until the drug-sniffing dog arrived based upon the confidential informant's information, as corroborated by independent police work, we overrule Koueviakoe's assignments of error. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} Det. Chapman, a Gallipolis police detective, received information from a confidential informant that Koueviakoe and Beverly Hisle were transporting cocaine into Gallia County. Det. Chapman passed this information, along with a description of the vehicle they would be using, to Trooper Robert J. Jacks of the Ohio State Highway Patrol. Trooper Jacks testified that he located the vehicle, driven by Koueviakoe, as it entered Gallia County on State Route 35. Hisle was a front seat passenger. The trooper observed Koueviakoe's vehicle cross the middle line on three separate occasions. The vehicle, an Oldsmobile minivan, had license plates registered to a 1991 Pontiac. Because of the marked lane violations and because the license plate did not match the vehicle, Trooper Jacks stopped the vehicle.
 {¶ 3} Trooper Jacks approached the vehicle on the driver's side and talked to Koueviakoe, while a deputy sheriff approached the passenger side. Koueviakoe and Hisle were very nervous and Trooper Jacks noticed a strong odor of air freshener coming from inside the vehicle. Trooper Jacks learned that Hisle had just purchased the vehicle that day and that Koueviakoe had a valid driver's license.
 {¶ 4} Trooper Jacks advised Koueviakoe that he would give him a warning for a marked lane violation and a ticket for a seat belt violation. He then talked to Koueviakoe and Hisle separately. They both reported that they were dating each other and going to Gallipolis. However, one said that they were going to see Hisle's mother and the other said that they were going to see Hisle's friend. One said that they would to return to Columbus on Saturday and the other said that they would return on Sunday. Additionally, Trooper Jacks discovered that Hisle did not know how to pronounce her boyfriend's last name, i.e. "Koueviakoe."
 {¶ 5} Instead of allowing Koueviakoe and Hisle to leave after he completed the paperwork for the citation and warning to Koueviakoe, the videotape of the stop shows that Trooper Jacks approached the passenger side of the vehicle and spoke to Hisle for one minute and forty-eight seconds. Eight seconds after Trooper Jacks ended his conversation with Hisle, the drug-sniffing dog entered the camera's view. Twenty-seven seconds later the dog alerted that narcotics were in the stopped vehicle. The videotape of the stop demonstrates that only twelve minutes and seventeen seconds elapsed from the time Koueviakoe stopped his vehicle until the dog alerted the officers to the presence of drugs.
 {¶ 6} The officers searched the vehicle, Koueviakoe, and Hisle. They found cocaine and crack cocaine, which resulted in charges of (1) possession of cocaine and (2) possession of crack cocaine against Koueviakoe. Koueviakoe entered not guilty pleas to the two felony offenses and filed a motion to suppress the cocaine and crack cocaine obtained from the search.
 {¶ 7} The trial court found that the confidential informant was not pivotal to this case because of other indicators leading to probable cause. Specifically, the trial court found that the officers had probable cause to search because of "[1] the nervousness of the occupants of the vehicle, [2] the registration of the license plates to another vehicle, [3] the discrepancies in the stories told by the occupants, [4] the strong odor of an air fragrance and [5] the `hit' by the drug dog." The trial court did not state at what point during the traffic stop that the trooper had reasonable suspicion of other criminal activity. Moreover, the court did not indicate which of the above five factual findings were necessary before the trooper had reasonable suspicion of other criminal activity.
 {¶ 8} After Koueviakoe entered a no contest plea, the trial court found him guilty of both felony drug offenses and sentenced him accordingly.
 {¶ 9} Koueviakoe appealed to this court in Gallia App. No. 03CA18, asserting that the trial court committed reversible when it failed to grant his motion to suppress the drugs that were confiscated during the traffic stop. We found that the trial court's first four factual findings did not give the trooper reasonable suspicion to detain Koueviakoe until the drug-sniffing dog arrived. We then determined that we could not consider whether the confidential informant gave credible information that the officer could consider as a factor leading to reasonable suspicion of other criminal activity because the trial court had not considered that evidence. Accordingly, we reversed the judgment of the trial court and remanded the cause so that the trial court could determine whether the information given by the confidential informant was credible or not credible.
 {¶ 10} On remand, the trial court found the information given by the confidential informant credible. Specifically, the trial court relied upon the fact that the confidential informant gave the information in the presence of Det. Chapman and an undercover officer who had used the confidential informant in the past and found the informant to be reliable and credible. The trial court also noted that Det. Chapman and the undercover officer conducted further investigation which: (1) confirmed that the confidential informant had, in fact, called Hisle's residence; (2) confirmed Hisle's address; and (3) verified the vehicle Hisle told the informant she would be using to carry the drugs into Gallia county that evening. Additionally, the trial court found that "[t]he information given to Det. Chapman and the undercover officer became reality: vehicle being driven, time of arrival, route of travel, occupants of vehicle and[,] upon search of the vehicle[,] the discovery of a large amount of cocaine as described by the confidential informant."
 {¶ 11} The trial court again found "that the trooper had probable cause to search because of (1) the nervousness of the occupants of the vehicle, (2) the registration of the license plates to another vehicle, (3) the discrepancies in the stories told by the occupants, (4) the strong odor of an air fragrance and (5) the `hit' by the drug dog." The trial court then stated: "[s]ince the entire traffic stop to the time of the dog's "hit" lasted 12 minutes and 17 seconds, the Court does not find this to be an unreasonable period of time. In conjunction with the above finding [the] Court finds the information given by the confidential informant to Det. Chapman and the undercover officer to be credible and this information may be relied upon by Trooper Jacks as a factor he could consider for probable cause to search." Accordingly, the trial court overruled Koueviakoe's motion to suppress.
 {¶ 12} Koueviakoe timely appeals raising the following assignments of error:
"1. The trial court committed reversible error when on remand from the appellate court, the trial court made written findings that based on the testimony of detective brandon chapman the court found the testimony of the informant to be credible. 2. the trial court committed error when it considered the hearsay testimony of detective chapman as a basis for finding the testimony of the informant credible."
 II. {¶ 13} In his first assignment of error, Koueviakoe contends that the trial court erred in finding the information provided by the confidential informant credible, and, in his second assignment of error, Koueviakoe contends that the trial court erred in considering the hearsay testimony of Det. Chapman in reaching that conclusion. Because these assignments of error are interrelated, we address them together.
 {¶ 14} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *." A search or seizure conducted without a prior finding of probable cause by a judge or magistrate is per se unreasonable, pursuant to theFourth Amendment, subject to a few specific and well-delineated exceptions. California v. Acevedo (1991), 500 U.S. 565; State v. Kessler
(1978), 53 Ohio St.2d 204, 207. The prosecution has the burden of establishing the application of one of the exceptions to this rule designating warrantless searches as per se unreasonable. Id., citations omitted. A court must exclude any evidence obtained in violation of the accused's Fourth Amendment rights. Mapp v. Ohio (1961), 367 U.S. 643, 655. The purpose of this exclusionary rule is to remove any incentive to violate the Fourth Amendment and, thereby, deter police from unlawful conduct. State v. Jones (2000), 88 Ohio St.3d 430, 435. See, also, Statev. Koueviakoe, Gallia App. No. 03CA18, 2004-Ohio-1994, at ¶ 12 (Hereinafter, "Koueviakoe I").
 {¶ 15} Our review of a decision on a motion to suppress presents mixed questions of law and fact. State v. Hatfield (Mar. 11, 1999), Ross App. No. 98CA2426, citing State v. McNamara (Dec. 23, 1997), Athens App. No. 97 CA 16, citing United States v. Martinez (C.A. 11, 1992), 949 F.2d 1117,1119. At a suppression hearing, the trial court is in the best position to evaluate witness credibility. State v. Dunlap (1995), 73 Ohio St.3d 308,314. Accordingly, we must uphold the trial court's findings of fact if the record supports them by competent, credible evidence. Id. We then conduct a de novo review of the trial court's application of the law to the facts. State v. Anderson (1995), 100 Ohio App.3d 688, 691. See, also, Koueviakoe I at ¶ 13.
 {¶ 16} As we noted in Koueviakoe I, The United States Supreme Court has identified three categories of police-citizen contact: the consensual encounter, the investigatory detention, and a custodial arrest. SeeFlorida v. Royer (1982), 460 U.S. 491, 501-507; United States v.Mendenhall (1980), 446 U.S. 544, 553. See, also, Koueviakoe I at ¶ 15. The investigatory detention is relevant here.
 {¶ 17} An investigative detention, or "Terry stop," constitutes a seizure that implicates the Fourth Amendment. State v. Taylor (1995),106 Ohio App.3d 741, 751. For purposes of the Fourth Amendment, a "seizure" occurs only when, in view of all the circumstances surrounding the incident, the police officer restrains the person's liberty, either by physical force or by show of authority, such that a reasonable person would not feel free to decline the officer's request and walk away. Statev. Williams (1990), 51 Ohio St.3d 58, 61. See, also, Koueviakoe I at ¶ 16.
 {¶ 18} When a seizure occurs, the officer must have a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent. Terry v. Ohio (1968), 392 U.S. 1, 21; see, also, State v. Chatton (1984), 11 Ohio St.3d 59, 61. "The investigative detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or dispel his suspicions." Taylor, supra, at 748. "The lawfulness of the initial stop will not support a `fishing expedition' for evidence of crime." State v.Gonyou (1995), 108 Ohio App.3d 369, 372, quoting State v. Smotherman
(July 29, 1994), Wood App. No. 93WD082, citing State v. Bevan (1992),80 Ohio App.3d 126, 130. See, also, Koueviakoe I at ¶ 17.
 {¶ 19} We determine reasonable suspicion by considering the totality of the circumstances. State v. Bobo (1988), 37 Ohio St.3d 177, paragraphs one and two of the syllabus; State v. Ramos, 155 Ohio App.3d 396,2003-Ohio-6535; State v. Heard, Montgomery App. No. 19323, 2003-Ohio-1047. We evaluate those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Andrews (1991), 57 Ohio St.3d 86, 87-88. See, also,Koueviakoe I at ¶ 18.
 {¶ 20} An investigatory stop and search may be justified by information received from a known informant. See Adams v. Williams
(1972), 407 U.S. 143, 147. A police officer may utilize information received from a known informant like any other clue. However, the informant must be shown to be reliable and credible. Adams, supra; UnitedStates v. Jones (W.D.Penn. 1987), 657 F.2d. 492, 497; State v. Haupricht
(Aug. 3, 1990), Lucas App. No. L-89-202; and State v. Paladin (1988),48 Ohio App.3d 16. The testimony of an officer that he has received reliable information from the confidential informant in the past may be sufficient to establish that new information provided by the informant is credible. State v. Karr (1975), 44 Ohio St.2d 163, 165, 166 (citations omitted). The information provided by the informant may also be corroborated by officers on the scene to establish reasonable suspicion.Whiteley v. Warden, Wyoming State Penitentiary (1971), 401 U.S. 560;Haupricht, supra.
 {¶ 21} Here, the only officer to testify at the suppression hearing was Det. Chapman. He testified that he never personally worked with the confidential informant before this case, but that an unnamed undercover officer working on this case had experience with this confidential informant and found him to be credible. Thus, Koueviakoe asserts that the State failed to meet its burden of proving that the confidential informant was credible because Det. Chapman did not testify based upon his own personal knowledge, but related information told to him by the undercover officer. Koueviakoe argues that Det. Chapman's testimony regarding the confidential informant's credibility is inadmissible hearsay, and, as such, the trial court should not have considered it in determining the confidential informant's credibility.
 {¶ 22} The State argues that the trial court properly found the information provided by the confidential informant to be credible based upon the independent police work conducted to corroborate the information. Additionally, the State argues that defense counsel failed to timely object to Det. Chapman's testimony regarding the credibility of the confidential informant, and therefore waived any objection that the testimony was improper.
 {¶ 23} "At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." Maumee v. Weisner (1999), 87 Ohio St.3d 295, 298-299, quotingUnited States v. Raddatz (1980), 447 U.S. 667, 679. The rules of evidence do not apply to admissibility determinations which are a responsibility of the judge. Evid.R. 101(C)(1) and 104(A). See, also, State v. Moss
(Mar. 15, 1996), Ross App. No. 95CA2089. Accordingly, there was no prohibition against the court using Det. Chapman's testimony about his discussion with the undercover officer to establish the confidential informant's credibility.
 {¶ 24} Even if the trial court could not properly consider Det. Chapman's testimony about the undercover officer's prior experience with the confidential informant, the record contains some competent, credible evidence to demonstrate the confidential informant's credibility. The United States Supreme Court has also recognized that even an anonymous tip, when corroborated by independent police work, may have sufficient indicia of reliability to provide reasonable suspicion for an investigatory stop. Alabama v. White (1990), 496 U.S. 325, 332.
 {¶ 25} In White, an anonymous caller told police that White would be leaving a particular apartment at a particular time, driving a brown Plymouth station wagon with a broken right taillight lens, that she would be going to a particular hotel, and that she would be in possession of cocaine in a brown attaché case. Id. at 327. The officers observed White leave the apartment and enter the vehicle as described by the caller, and then followed the vehicle as it traveled the most direct route to the hotel specified by the caller. Id. The police stopped the car before it reached the hotel, informed White that they stopped her because they suspected she was carrying cocaine in the vehicle. Id. White agreed to allow the officers to search the car for cocaine. Id. When the officers opened the attaché case, they discovered marijuana and arrested White. Id. The officers later discovered three milligrams of cocaine in White's purse during processing at the station. Id.
 {¶ 26} In White, the Court determined that an anonymous caller's ability to accurately predict an individual's future behavior demonstrated a special familiarity with the individual's affairs such that it was reasonable for police to believe that the caller was likely to have access to reliable information about the individual's illegal activities. Id. at 332, citing Illinois v. Gates (1983), 462 U.S. 213, 244,245. The Court recognized that it was a "close call." White at 332. However, under the totality of the circumstances, the Court concluded that the anonymous tip exhibited sufficient indicia of reliability to justify the investigatory stop of White's car. Id.
 {¶ 27} Here, as in White, the trial court noted that the information the confidential informant gave to Det. Chapman and the undercover officer became reality. Trooper Jacks observed the vehicle described by the confidential informant, at the time specified by the informant, on the route specified by the informant. After stopping the car, Trooper Jacks confirmed that the occupants of the car matched the names given by the confidential informant. Therefore, on the authority of White, there was some competent, credible evidence to support the trial court's conclusion that Trooper Jacks had a reasonable, articulable suspicion to justify the investigatory stop of Koueviakoe's car and detain him until the drugsniffing dog arrived. Accordingly, we overrule both of Koueviakoe's assignments of error and affirm the judgment of the trial court.
Judgment Affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Court of Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Abele, P.J. and Harsha, J.: Concur in Judgment and Opinion.