[Cite as *State v. Stephenson*, 2024-Ohio-624.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 23CA1165 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| TRACY STEPHENSON, | : | |
| Defendant-Appellant. | : | **RELEASED 2/13/2024** |

_____
APPEARANCES:

Connor P. Reilly, Cincinnati, Ohio, for appellant.

Aaron E. Haslam, Adams County Prosecutor, West Union, Ohio, for appellee.
_____
Hess, J.

**{¶1}** Tracy Stephenson appeals his conviction following a jury trial on two counts of possession of fentanyl, one count of possession of heroin, and one count of aggravated drug possession. The charges stem from an investigative stop of Stephenson's vehicle. During the stop a detective searched his vehicle and discovered fentanyl and heroin. Stephenson contends that the trial court erred when it denied his motion to suppress because the detective did not have reasonable suspicion to initiate the stop and lacked probable cause to search the vehicle.

**{¶2}** We find that the detective did have reasonable suspicion to make an investigative stop of Stephenson's vehicle based on the information provided by an informant. However, the detective lacked probable cause to search the vehicle and the purported "consent" that Stephenson provided came only after the detective told him that

he had probable cause to search the vehicle and was going to search it.   Stephenson did not "consent" but rather acquiesced to a false claim of lawful authority. There is no consent under such circumstances. We sustain Stephenson's sole assignment of error and reverse the trial court's judgment.

## I.  FACTS AND PROCEDURAL HISTORY

{¶3}   The Adams County grand jury indicted Stephenson on two counts of possession of fentanyl in violation of R.C. 2925.11(A), one a second-degree felony and one a fourth-degree felony; one count of possession of heroin in violation of R.C. 2925.11(A), a fourth-degree felony; and one count of aggravated drug possession in violation of R.C. 2925.11(A), a fifth-degree felony. He pleaded not guilty to the charges and moved to suppress all evidence obtained from the investigative stop. Stephenson argued that the state did not have reasonable suspicion to stop his vehicle and did not have probable cause to search it. The state did not file a written response to the motion to suppress. The trial court conducted a hearing on the motion.

{¶4}   Detective Brian Newland of the Adams County Sheriff's Office testified that he oversees drug and narcotic-related criminal investigations. Detective Newland testified that when he stopped Stephenson, Newland was dressed in plain clothes with a tactical bullet-proof vest that had a chest and back panel with the sheriff's office logo on it, was wearing his gun in his holster, and was driving an unmarked white minivan. Detective Newland was parked at a Peebles gas station parking lot because he had received information from a known informant that Stephenson would park his blue Chevy pickup truck at that gas station and travel to Cincinnati in a grey Jeep to purchase narcotics for resale in Adams County. Detective Newland testified that he had a prior suspicion before

receiving this particular tip that Stephenson was involved in drug trafficking. Detective Newland had information that Stephenson would park his red semitruck with a "Stephenson Trucking" logo in the Peebles gas station parking lot, use his personal blue Chevy truck to travel to and from the red semitruck, and then travel to Cincinnati, Dayton, and sometimes Portsmouth to pick up narcotics that he would store inside the semitruck. Detective Newland believed that Stephenson would either sell the narcotics out of his semitruck or his personal residence.

{¶5} Detective Newland testified that on this occasion the informant told him that Stephenson would be travelling to Cincinnati to obtain the narcotics. The informant had worked with Detective Newland before and had always given him reliable information. There was never any occasion when the information the informant had given was not reliable. The informant had told Detective Newland that Stephenson would have both his red semitruck and his blue Chevy pickup truck in the gas station parking lot. When Detective Newland arrived at the parking lot, he saw a blue Chevy pickup, ran the plates, and determined that it belonged to Stephenson. Detective Newland had been waiting in the parking lot approximately 30 minutes when he saw a grey Jeep enter the parking lot and travel to the blue Chevy pickup. Detective Newland recognized the driver of the Jeep as Sierra Penrod, a woman that Detective Newland knew and had previous contact with in other narcotic investigations. The informant had previously told Detective Newland that Sierra Penrod would be driving the grey Jeep. Stephenson was in the passenger seat of the Jeep. Although Detective Newland had never met or spoken to Stephenson before, he had seen multiple photographs of him.

{¶6} Detective Newland testified that although he had confirmed some of the informant's tips, such as the fact that the blue pickup truck was Stephenson's and that Stephenson arrived in a grey Jeep driven by Penrod, neither Detective Newland nor any other law enforcement officer followed the Jeep to Cincinnati or witnessed Stephenson engage in any illegal drug activity.

{¶7} The Jeep pulled up briefly to the blue Chevy pickup truck and then left the scene. Then, the blue Chevy pickup truck began to back out of the parking lot and continued towards the red semitruck that was also parked in the parking lot. Detective Newland had observed the semitruck in the parking lot and had previously identified it as belonging to Stephenson with a Stephenson Trucking logo on the doors. After Detective Newland observed Stephenson drive the blue pickup truck over to the semitruck, he drove over to it. Detective Newland pulled up and parked behind Stephenson's pickup truck, blocking it so that Stephenson could not leave. The blue pickup truck was running when Detective Newland approached it from the driver's side door. He knocked on the window and asked Stephenson to turn off the truck, step out, and speak with him. Detective Newland did not see Stephenson transfer any drugs into the blue pickup truck or do anything illegal at any point prior to asking Stephenson to get out of his truck.

{¶8} Detective Newland told Stephenson he knew that he had driven to Cincinnati to obtain narcotics, though he later admitted that this was a "bluff" and nobody had followed Stephenson to Cincinnati. Detective Newland told Stephenson, "he wasn't under arrest, but he just was not free to leave at that time," he gave Stephenson his Miranda rights, and continued to question him. Detective Newland was joined by a second uniformed officer in a marked patrol car from the Peebles Police Department. Stephenson

was standing outside the vehicle, next to the driver's side door. Detective Newland testified that Stephenson initially denied involvement in any illegal drug activity, but then he told Detective Newland that he did have a small amount of narcotics in his pocket. After Stephenson retrieved that, Detective Newland continued talking with him and told him that he knew that was not all the narcotics Stephenson had. Stephenson then walked around to the passenger side of the vehicle, with Newland following him, and reached in and began unlocking the safe. Detective Newland asked Stephenson if Newland could unlock the safe because he was concerned there may be guns in the safe or in the vehicle. Stephenson stepped aside to allow Detective Newland to open the safe.

{¶9} Detective Newland testified that at no time did Stephenson tell Detective Newland not to look inside his truck, nor did he indicate at any point that he wanted to speak to an attorney. However, Detective Newland also testified that when he asked Stephenson if he could search his truck, Stephenson told him no. After Stephenson told him no, Detective Newland told him he was going to search the truck anyway.

{¶10} After Detective Newland testified, the state played the video of the body camera from the incident. In the video, Detective Newland tells Stephenson he is not free to leave and gives him a Miranda warning. During the initial questioning, Stephenson repeatedly denied having any drugs or weapons. Detective Newland then asks Stephenson if he has anything he shouldn't have and asks, "So there be no problem with us searching of not finding anything?" Stephenson responds, "I would prefer you not to search [inaudible]." Detective Newland then tells Stephenson he has enough probable cause to search the vehicle and he is going to search it:

> Well, I'm, this is what's going to happen, okay? I have enough reason, suspicion to search your vehicle. So, I'm gonna search it. Okay? If I find

anything, you know, you're gonna have to answer to it. You know, I already know what's up. You know, I'm giving you the opportunity to be upfront. Now, we aren't, we aren't just here for no reason. You know what I mean?

{¶11} And Stephenson asked, "Well, what if, uh, what if I am upfront?" Detective Newland stated, "You know, then you're upfront. And I appreciate the honesty." Stephenson asks, "Do I get to go home?" Detective Newland tells Stephenson he will go home and not be going to jail:

> Yeah. I, I didn't plan to take you to jail either way, but you are going, I mean, you are going to be charged, you know what I mean? Just because you don't go to jail today doesn't mean you're not gonna be charged.

Stephenson asked, "So, if I just go ahead and?" Detective Newland interrupts and tells him, "The thing is, I, I already know what you got and I, I probably can find it, you know, within 10, 20 seconds. You know, I'll be up front and honestly, we've been watching for a while. So we know what's up with the semi trips and everything else." Stephenson informed the officer that he drives a semitruck for his employment and denied any drug trafficking activities using his semitruck. Detective Newland then asked, "Listen, do you got less than an ounce?" Stephenson nods affirmatively and states, "Oh yeah." Detective Newland asks, "Do you wanna go ahead and get it?" Contrary to Detective Newland's testimony, Stephenson did not take anything from his pocket and give it to Newland. Rather, Stephenson turned around, opened up the door, reached inside the vehicle, removed a bottle, and handed it to Detective Newland. Detective Newland inspected the bottle and stated, "Listen, I know you didn't go to the city just for this." Stephenson then walks around to the passenger side of his pickup truck, opens the door, and begins to open a locked safe. Detective Newland interrupts him and tells him, "Hey, can you pull that out here? I just don't want you grabbing a gun or something?" Stephenson steps

away from the safe to give Detective Newland room to open the safe. The contents of the safe include several bags of what is later identified as fentanyl and heroin.

{¶12} The trial court denied the motion to suppress, finding it "not well taken." No further analysis was given in the judgment entry. However, the trial court stated its reasoning on the record at the conclusion of the hearing. The trial court found that the detective had probable cause for the investigative stop based upon the information given by the informant. The trial court also found that Stephenson engaged in a type of "bartering" where he wanted to be able to go home and wanted to know if he voluntarily cooperated that he would be able to go home. The trial court found that Stephenson had initially refused to allow a search of his vehicle but then decided to voluntarily cooperate and open the safe inside his vehicle to disclose the drugs. The trial court stated that had there been a search of Mr. Stephenson's vehicle without his consent, "there would be some pretty strong suppressible issues." However, the trial court found that the search was voluntary and consensual. "The, uh, so the court does find there was probable cause for the investigatory stop, uh, that then the search was determined, uh, and eventually turned into a consensual search."

{¶13} The matter proceeded to a jury trial, which found Stephenson guilty on all counts. The trial court sentenced him to a total prison term of seven to ten years.

## II.  ASSIGNMENT OF ERROR

{¶14} Stephenson presents the following assignment of error:

> The trial court erred when it denied Mr. Stephenson's Motion to Suppress.

## III. LEGAL ANALYSIS

### A. Standard of Review

**{¶15}** In general, "appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The Supreme Court of Ohio has explained:

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *Burnside* at ¶ 8.

**{¶16}** "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. The Supreme Court of Ohio has held that these provisions provide the same protection in felony cases. *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 18. "This constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion at trial of evidence obtained from an unreasonable search and seizure." *State v. Petty*, 4th Dist. Washington Nos. 18CA26 & 18CA27, 2019-Ohio-4241, ¶ 11.

**{¶17}** " '[S]earches [and seizures] conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " (Footnotes omitted and alterations sic.) *State v. Conley*, 4th Dist. Adams

No. 19CA1091, 2019-Ohio-4172, ¶ 17, quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "Once a defendant demonstrates that he or she was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible." *State v. Dorsey*, 4th Dist. Scioto No. 19CA3874, 2019-Ohio-3478, ¶ 13.

### B. The Investigative Stop

**{¶18}** Stephenson contends that the trial court erred when it denied his motion to suppress because the detective lacked reasonable suspicion to initiate the stop. He argues that the detective stopped him, made him exit the truck, told him not to leave, and gave him his Miranda rights all based on information the detective received from a known informant. The informant told the detective that Stephenson would park his blue Chevy pickup truck in the gas station parking lot in Peebles and would be travelling to Cincinnati in a grey Jeep to purchase narcotics for resale in Adams County. However, Stephenson argues that the evidence at the suppression hearing was "totally inadequate to demonstrate the credibility, reliability and veracity of the confidential informant."

**{¶19}** An investigative stop constitutes a seizure that implicates the Fourth Amendment. *State v. Koueviakoe*, 4th Dist. Gallia No. 04CA11, 2005-Ohio-852, ¶ 17. A seizure occurs when the police officer "restrains a person's liberty, either by physical force or by show of authority, such that a reasonable person would not feel free to decline the officer's request and walk away." *Id. "*When a seizure occurs, the officer must have a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent. *Id.* at ¶ 18, citing *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A confidential informant's tip may provide officers with the

reasonable suspicion necessary to conduct an investigative stop. *State v. Abernathy*, 4th Dist. Scioto No. 07CA3160, 2008-Ohio-2949, ¶ 26.

**{¶20}** When an officer bases reasonable suspicion on an informant's tip, we consider several factors to be "highly relevant" to determine the value of that tip, including "the informant's veracity, reliability and basis of knowledge." *Maumee v. Weisner*, 87 Ohio St.3d 295, 299, 720 N.E.2d 507 (1999), citing *Alabama v. White*, 496 U.S. 325, 328, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

> To assess the existence of these factors, it is useful to categorize informants based upon their typical characteristics. Although the distinctions between these categories are somewhat blurred, courts have generally identified three classes of informants: the anonymous informant, the known informant (someone from the criminal world who has provided previous reliable tips), and the identified citizen informant. While the United States Supreme Court discourages conclusory analysis based solely upon these categories, insisting instead upon a totality of the circumstances review, it has acknowledged their relevance to an informant's reliability. The court has observed, for example, that an anonymous informant is comparatively unreliable and his tip, therefore, will generally require independent police corroboration. The court has further suggested that an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: "[I]f an unquestionably honest citizen comes forward with a report of criminal activity-which if fabricated would subject him to criminal liability-we have found rigorous scrutiny of the basis of his knowledge unnecessary." (Brackets sic.) (Citations omitted.)

*Weisner* at 300.

**{¶21}** Here the detective testified that he had worked with this informant before and had received previous tips, which had always been reliable. The informant had never been unreliable. Additionally, the detective checked some of the informant's information and determined it was accurate. When the detective arrived at the gas station, a blue pickup truck was parked there and the detective's check on the license plate verified that it belonged to Tracy Stephenson. When Stephenson pulled into the gas station, he was

a passenger in a grey Jeep. A woman named Sierra Penrod was driving the grey Jeep and the detective had previous contact with her in other narcotics investigations and was told she would be driving the grey Jeep. The detective had previously received information about Stephenson's involvement in narcotics for the past three to four months. We find that under the totality of the circumstances the known informant's tip exhibited sufficient indicia of reliability to justify the initial investigatory stop of Stephenson's pickup truck.

## C. The Search of the Pickup Truck

**{¶22}**  After the detective stopped Stephenson, ordered him out of his pickup truck, read him his Miranda rights, and told him he was not free to leave, Stephenson spoke with the detective and denied any involvement in drug trafficking. The detective then proposed a search of Stephenson's pickup truck, "So, there be no problem with us searching of not finding anything." Stephenson declined to allow a search, "I would prefer you not search."

**{¶23}**  At this point in the investigative stop the detective had no further cause to detain Stephenson. The detective had questioned Stephenson and he denied any illegal drug involvement or possession. The detective did not see Stephenson transport drugs or any suspicious packages from the Jeep to the pickup truck, did not see any illegal drugs in plain view as Stephenson exited the truck, and did not smell any odor of illegal drugs coming from Stephenson or his truck. *State v. Moore*, 90 Ohio St.3d 47, 48, 734 N.E.2d 804, 805 (2000) (the smell of marijuana by a person qualified to recognize the odor is sufficient to establish probable cause to search a motor vehicle); *State v. Claytor*, 85 Ohio App.3d 623, 630, 620 N.E.2d 906, 910 (4th Dist.1993) (police can seize illegal

drugs in vehicle under the plain view doctrine without a warrant). The detective did not call a canine drug detection unit while he waited for Stephenson to arrive, so there was no canine alert on the vehicle. *Koueviakoe,* 2005-Ohio-852, ¶ 27 (confidential informant gave officer reasonable suspicion for the investigatory stop and drug-sniffing dog's alert gave the officer probable cause to search the vehicle).

**{¶24}** Although this started out as a valid investigative stop and Stephenson was not free to leave, an investigative stop can only last as long as it takes a police officer to confirm or dispel his suspicions.

> The investigative detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or dispel his suspicions. "The lawfulness of the initial stop will not support a 'fishing expedition' for evidence of crime."
>
> We determine reasonable suspicion by considering the totality of the circumstances. In doing so, we evaluate those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold."

*State v. Flickinger*, 4th Dist. Athens No. 06CA44, 2007-Ohio-3233, ¶ 11-12. The detective testified several times that at no point did he observe Stephenson do anything illegal. Stephenson admitted to no illegal activity, the detective did not see or smell any illegal drugs, and no canine unit alerted on the vehicle. Additionally, the detective was not able to obtain Stephenson's consent to search the vehicle.

**{¶25}** However, instead of telling Stephenson he was free to go, the detective continued to detain him and told Stephenson he was going to conduct a search of the pickup truck because he had "enough reason, suspicion to search your vehicle. So, I'm gonna search it." The detective stated that "this is what's going to happen," he "already knows what's up," "we aren't just here for no reason" and he was going to charge

Stephenson with a crime, "you are going to be charged, you know what I mean?" He also told Stephenson, "I already know what you got and I, I probably can find it, you know, within 10, 20 seconds."

{¶26} After the detective told Stephenson he would be searching Stephenson's pickup truck and charging him with a crime, Stephenson acquiesced. Stephenson acknowledged that he possessed a small quantity of narcotics, and when asked by the detective to turn it over, Stephenson opened up his truck door, reached inside, and handed over a bottle. Upon further insistence by the detective, Stephenson walked around to the passenger side door, opened up the door, unlocked the safe, and stepped aside to allow the detective to search the safe.

{¶27} Stephenson argues that he did not give a valid consent to search his vehicle. He contends that the investigative stop should have ended after the detective initially questioned Stephenson and he denied being involved in criminal drug activity. After that, Stephenson should have been free to leave, but instead the detainment continued and the detective told Stephenson he was going to search his truck.

{¶28} The state argues that the detective was conducting an investigatory stop and had probable cause to believe the vehicle contained contraband. The state argues that Stephenson provided probable cause to search his vehicle when he "admitted he possessed a small amount of narcotics and retrieved it from his pocket before giving it to Detective Newland." However, the record does not support the state's position. Stephenson did not produce narcotics from his pocket and give it to the detective. Stephenson retrieved the narcotics from his vehicle – not his pocket – and he did so only

after the detective told him that he was going to search Stephenson's vehicle and then asked Stephenson to retrieve the narcotics for him.

{¶29} Moreover, the state did not argue probable cause as the basis for the search at the suppression hearing.[1] The state did not argue that the detective had probable cause to search the vehicle based on Stephenson's production of the small quantity of narcotics from his pocket – the video of the detective's body camera shows that Stephenson produced nothing from his pocket. Instead, the state argued that Stephenson consented to the search, "In this case, Mr. Stephenson is freely consenting to giving up the key, giving up the items in the safe. Although he indicated at the beginning that he would not, he, I think his words were, I'd rather you not. Um, he did not stop the conversation, did not, uh, indicate lack of consent after that. * * * that Mr. Stephenson then consented to the searches, and he voluntary gave over the evidence as requested." When the trial court asked the state, "If Mr. Stephenson had held pat on, you're not searching it, the body cam suggests that * * * Newland said, I'm gonna search it anyway. And had, had Mr. Stephenson held pat on his position and the search had gone over his objections? Is your argument the same?" The state responded, "No, I think it had been a different set of * * * facts * * *. Um, the alternative would be, and, and had there been a question asked, uh, at the time, the advice given would be to get a search warrant. Um, so that may have been a next step rather than just searching without consent." The trial court stated that

---

[1] The state did not file a response to the motion to suppress but preserved the arguments it made at the hearing for purposes of the appeal. *State v. Farrow*, 2023-Ohio-682, 209 N.E.3d 830, fn. 1 (4th Dist.); *e.g., State v. Werder*, 6th Dist. Fulton No. F-19-008, 2020-Ohio-2865, ¶ 37-39 (a state waives arguments it neither raises in a written response to a motion to suppress nor presents at the suppression hearing).

had there been a search of Mr. Stephenson's vehicle without his consent, "there would be some pretty strong suppressible issues."

**{¶30}** Here the detective did not have any reasonably articulable facts to justify Stephenson's further detention after he questioned him and Stephenson denied engaging in any illegal drug activity and refused permission to search the pickup truck. However, even though the detective's continued detention of Stephenson was unlawful, that does not end the analysis. "Voluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search." *State v. Robinette*, 80 Ohio St. 234, 241, 1997-Ohio-343, 685 N.E.2d 762, 769.

**{¶31}** Because the detective did not have probable cause to conduct a search, the key question here is whether Stephenson gave consent to search his vehicle. Consent is an exception to the warrant requirement that requires the state to "show by 'clear and positive' evidence that the consent was 'freely and voluntarily' given." *State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988). " '[T]he State has the burden of proving that the necessary consent was obtained and that it was *freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority*.' " (Emphasis sic.) *State v. Robinette*, 80 Ohio St.3d 234, 243, 685 N.E.2d 762 (1997), quoting *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

**{¶32}** "Clear and positive evidence" is the substantial equivalent of clear and convincing evidence. *State v. Debrossard*, 4th Dist. Ross No. 13CA3395, 2015-Ohio-1054, ¶ 39. The Supreme Court of Ohio has defined "clear and convincing evidence" as follows:

The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

*In re Estate of Haynes,* 25 Ohio St.3d 101, 103–04, 495 N.E.2d 23 (1986). In reviewing whether the lower court's decision was based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Debrossard*, 4th Dist. Ross No. 13CA3395, 2015-Ohio-1054, ¶ 39.

**{¶33}** "Whether an individual voluntarily consented to a search is a question of fact, not a question of law." *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 21; *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). "Even though the state's burden of proof is 'clear and convincing,' this standard of review is highly deferential and the presence of only 'some competent, credible evidence' to support the trial court's finding requires us to affirm it." *Id.*, citing *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *State v. Isaac,* 2018-Ohio-5433, 127 N.E.3d 350, ¶ 33-34 (4th Dist.).

**{¶34}** The trial court found that Stephenson gave consent, "But in fact, Mr. Stephenson, uh, eventually consented." However, the "consent" Stephenson "eventually" gave was only after the detective told him, "this is what's going to happen  * * * I have enough reason, suspicion to search your vehicle. So I'm gonna search it." The detective's false statement to Stephenson that he had a lawful basis to search Stephenson's truck and was going to search it is no different from a police officer's announcement that the officer has a warrant to search a home but, in fact, lacks a warrant. *Bumper v. North*

*Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). In *Bumper*, the police knocked on a woman's home and announced, "I have a search warrant to search your house." The woman responded, "Go ahead" and opened the door. However, at the suppression hearing, the prosecutor stated that the state was not relying on a search warrant to justify the search, but rather based it on the woman's consent. *Id.* at 546. The Supreme Court of the United States held that there can be no "consent" given after an official conducting the search asserts he has a search warrant.

> When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent.

*Bumper v. North Carolina*, 391 U.S. 543, 550; *State v. Trembly*, 4th Dist. Washington No. 99CA03, 2000 WL 875948, *6 (Jun 30, 2000) (Abele, J., concurring) ("If a law enforcement officer did falsely assert that he possessed a search warrant in order to convince a suspect to consent to a search, the suspect's consent will be deemed to be invalid" citing *Bumper v. North Carolina, supra*).

**{¶35}** If under all the circumstances it appears that "the consent was not given voluntarily—that it was coerced by threats or force, or granted only in submission to a claim of lawful authority"—then the consent is invalid and the search is unreasonable. *Schneckloth v. Bustamonte*, 412 U.S. 218, 233, 93 S.Ct. 2041, 2051, 36 L.Ed.2d 854 (1973). Such "lawful authority" is a law enforcement officer's express or implied false claim that the officer can immediately proceed to make the search regardless of consent. *See State v. Sears,* 2d Dist. Montgomery No. 20849, 2005–Ohio–3880, ¶ 37, citing *Bumper v. North Carolina, supra*; *State v. Miller*, 4th Dist. Ross No. 11CA3217, 2012-Ohio-1901, ¶ 19.

**{¶36}** Courts consider six factors to determine whether consent to a search was freely and voluntarily given: (1) whether the defendant's custodial status was voluntary; (2) whether coercive police procedures were used; (3) the extent and level of the defendant's cooperation; (4) the defendant's awareness of his or her right to refuse consent; (5) the defendant's education and intelligence; (6) the defendant's belief that no incriminating evidence would be found. *State v. George*, 2d Dist. Montgomery No. 25945, 2014-Ohio-4853, ¶ 28. For consent to be considered "an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe he or she had the freedom to refuse * * * * and could in fact leave." *State v. Robinette,* 80 Ohio St.3d 234, 685 N.E.2d 762 (1997), paragraph 3 of the syllabus.

**{¶37}** The state provided evidence on several but not all of the six factors. First, the defendant's custodial status was involuntary. Stephenson was not free to leave and had been told that by the detective who had testified that he had also parked behind Stephenson to block him in. Second, several coercive police procedures were used. Although the detective first tried to obtain consent for the search, when Stephenson did not give it, the detective falsely claimed he had lawful authority to search the vehicle and would do so. The detective also told Stephenson, before the detective had any reasonable basis to say so, that he was going to criminally charge Stephenson. Third, the extent of Stephenson's cooperation was minimal. Stephenson denied any illegal drug activity and did not consent to a search of his vehicle. Stephenson's cooperation came only after the detective claimed he had lawful authority to conduct a search of his vehicle. As for the defendant's awareness of his or her right to refuse consent, the state did not introduce any evidence of this factor. However, because the detective told Stephenson

his vehicle would be searched regardless of consent, we find this factor to be irrelevant because we do not believe a reasonable person would believe that he or she had the freedom to refuse to allow a search made under a claim of lawful authority. The state did not present any evidence of the defendant's education or intelligence. However, the detective testified that Stephenson owned a trucking business. Therefore it seems probable that he was educated and of average intelligence, if not greater. The state also did not produce any evidence of Stephenson's belief concerning whether incriminating evidence would be found. However, based on the illegal drugs found, it would appear likely that Stephenson believed incriminating evidence would be found and thus did not initially consent to a search and would not have consented to one later but for the detective's claim of lawful authority.

{¶38} As in *Bumper, supra*, the state's evidence shows that, based on the totality of the circumstances, Stephenson's consent was given only after the detective conducting the search asserted lawful authority – the false claim that he can immediately proceed to search the vehicle without consent. The state's evidence shows "no more than acquiescence to a claim of lawful authority." *Bumper* at 549. "Coercion is inherent in false claims of authority." *State v. Trembly*, 4th Dist. Washington No. 99CA03, 2000 WL 875948, *6 (Jun 30, 2000) (Abele, J., concurring).

{¶39} A similar situation arose in *Seem*, *infra,* where the defendant was coerced into consenting to the "dump" of his phone after the detective asserted a claim of lawful authority to seize the phone. *State v. Seem*, 2022-Ohio-3507, 196 N.E.3d 384, ¶ 20-21, (6th Dist.) *appeal not allowed,* 168 Ohio St.3d 1531, 2023-Ohio-86, 200 N.E.3d 1169. The detective did not have a warrant to seize the phone but told Seem he was going to take

it anyway and it would be quicker if Seem consented to a "dump" of the contents. The appellate court found that Seem "merely acquiesced to [the detective] Zender's claim of lawful authority when he chose the faster, 'more convenient' option for getting his phone back. Because acquiescence to a claim of lawful authority is not sufficient to constitute consent, the results of the eventual search of the phone must be suppressed." *Id.* at ¶ 25. "Seem acquiesced to the warrantless search of the phone because he believed—based on Zender's representations—that Zender was authorized to immediately seize it." *Id.* at ¶ 22; *see also State v. Samples*, 11th Dist. Geauga No. 93-G-1787, 1994 WL 315710, *1 (Jun 24, 1994) (after defendant adamantly refused to consent to a search of his briefcase, the officer told him that he "was going to enter it into evidence for safekeeping" and the defendant would not get it back until the officer found out what was in it or was ordered to return it. The appellate court held that defendant's statement, "Oh what the hell, go ahead and open it" was the result of coercion, not consent.).

{¶40} Like the defendants in *Bumper, Seem*, and *Samples*, Stephenson was told that the law enforcement official had lawful authority to conduct a search. Under the totality of the circumstances test, we find that the state failed to prove by "clear and positive evidence" (i.e., clear and convincing evidence) that Stephenson's consent was anything other than the acquiescence to a claim of lawful authority. We find that there lacked some competent, credible evidence to support the trial court's finding that Stephenson's consent was freely and voluntarily given. All the evidence of consent and "bartering" occurred after the detective's false claim of lawful authority. There was no

evidence of consent before that claim was made. As a result, the evidence collected in that search is inadmissible.

> Implicit in the Fourth Amendment's protection from unreasonable searches and seizures is its recognition of individual freedom. That safeguard has been declared to be "as of the very essence of constitutional liberty" the guaranty of which "is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen * * *."

*State v. Gardner*, 135 Ohio St.3d 99, 2012-Ohio-5683, 984 N.E.2d 1025, ¶ 17, quoting *Ker v. California*, 374 U.S. 23, 32–33, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

**{¶41}** The trial court erred in denying Stephenson's motion to suppress. Although the detective had reasonable suspicion to initiate the investigative stop based on the credible, reliable, and knowledgeable informant's tip, the detective (1) did not have reasonably articulable facts to further detain him after the initial questioning and Stephenson's initial refusal to consent to a search; (2) did not have probable cause to search the vehicle; and (3) did not have Stephenson's consent as a voluntary act of free will. The detective's claim of lawful authority was coercive; there cannot be consent. We sustain Stephenson's sole assignment of error.

## IV. CONCLUSION

**{¶42}** Having sustained the assignment of error, we reverse the trial court's judgment, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

JUDGMENT REVERSED, CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED, CAUSE REMANDED and that appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
        Michael D. Hess, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**